471 So.2d 696 (1985)
LOUISIANA STATE BAR ASSOCIATION
v.
John R. HICKMAN.
No. 84-B-1219.
Supreme Court of Louisiana.
June 17, 1985.
Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Jr., Natchitoches, for applicant.
John Hickman, Alexandria, in Pro. Per.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against John R. Hickman, a member of said association. The committee had previously conducted an investigation of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of eight separate specifications of misconduct was given to respondent in a communication from the committee dated February 28, 1984.
Specification No. 1 alleged:
That in your capacity as an attorney at law, on or about August 18, 1983, you received a check in the sum of $7,500.00 made payable to John Dale Powers, Attorney at Law. Said check was given to you by Finance America to pay a lien on a mortgage loan. You received said check and failed, refused, and neglected to transmit said check to Mr. Powers and did, in fact, forge Mr. Powers's signature to said check and cashed said check for your own benefit. You received all proceeds therefrom and failed, refused and neglected to repay said funds to the *697 rightful owner despite repeated demands to do so, all in violation of Disciplinary Rule 1-102.[1]
Specification No. 2 alleged:
That you did commingle and convert said funds to your own use, as evidenced by the receipt of funds of $7,500.00 as set forth in Specification No. 1 above and your refusal to pay said monies to the rightful owner thereof, despite repeated requests to do so, all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102.[2]
Specification No. 3 alleged:
On or about May 11, 1983, you were retained to pass an act of sale on behalf of Mr. and Mrs. Jimmy Wayne Steele. Said sale related to the purchase of property by Mr. and Mrs. Steele from Mr. and Mrs. Carson M. Nardini, Jr. In connection therewith you passed said act of sale and received the necessary funds to cancel all existing liens and mortgages outstanding against said property. That, despite repeated requests, you failed, refused and neglected to properly use the funds received and did not promptly cancel all mortgages outstanding on said property all in violation of Disciplinary Rule 1-102, Disciplinary Rule 6-101(A)(3), and Disciplinary Rule 9-102.[3]
Specification No. 4 alleged:
In connection with the act of sale set forth in Specification No. 3 above, you received sufficient funds to cancel the mortgages in the sum of $27,435.80 in favor of Troy & Nichols and USDA Federal Credit Union of Alexandria. Despite repeated requests, you failed, refused and neglected to promptly cancel said mortgages and did in fact commingle and convert the sum of $27,435.80 to your own use, all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102.
Specification No. 5 alleged:
That in your capacity as an attorney at law, you were retained by Finance America Corporation to close mortgage loans. You closed a loan to Richard O'Neal, in July of 1983. In connection therewith, Finance America Corporation placed the sum of $26,999.39 in escrow with you. On or about September 9, 1983, you *698 presented your check drawn of said escrow funds in the sum of $26,999.39. Said check was returned N.S.F. and, that despite repeated requests, you failed, refused and neglected to make said check good all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102.
Specification No. 6 alleged:
That you did, in fact, commingle and convert the sum of $26,999.39 to your own use, as evidenced by the receipt of funds in the amount of $26,999.39 as set forth in Specification No. 5 and your failure, refusal and neglect to pay said monies to the rightful owner thereof, all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102.
Specification No. 7 alleged:
That in your capacity as an attorney for Finance America Corporation, $6,900.00 was placed in an escrow account with you in connection with a loan made in the name of Lloyd Ussery. You failed, refused and neglected to pay said monies to Lloyd Ussery and did, in fact, commingle and convert said monies to your own use, all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102.
Specification No. 8 alleged:
That despite the many letters and communications from the Committee on Professional Responsibility, directing that you make a reply to it, to date you have failed, refused and neglected to cooperate with the Committee on Professional Responsibility in the investigation of this matter.
The above conduct is in violation of the Code of Professional Responsibility of the Louisiana State Bar Association including, but not limited to, violation of Disciplinary Rule 1-102(A)(1), (4), (5), (6).
A formal investigative hearing was held on March 19, 1984, as provided by article 15, section 3(b) of the articles of incorporation. Respondent was present and represented himself at the hearing and testified on his own behalf.
Based on the evidence adduced at the formal investigative hearing, the committee, by unanimous vote, was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; specifically, respondent was guilty of the conduct set forth in the specifications of February 28, 1984. On June 26, 1984, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent did not file an answer to the petition. Thereafter on motion by the committee, we appointed Daniel E. Broussard, Jr. commissioner to take evidence and to report to this court his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was conducted November 8, 1984. Respondent did not appear at the hearing. The committee introduced in evidence the entire record of the earlier investigative hearing. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact, conclusions of law, and recommendation that respondent be disbarred and submitted the matter for this court's determination. The committee concurred in the commissioner's findings of fact and law[4] and his recommendation of disbarment. Respondent filed neither concurrence nor opposition to the report of the commissioner. After oral argument before this court,[5] the matter was submitted for our determination on the record before the commissioner.
Respondent was retained in May of 1983 to pass an act of sale on property to be *699 purchased by Mr. and Mrs. Jimmy Steele from Mr. and Mrs. Carson Nardini. He received $40,000 from Rapides Bank & Trust Company which he deposited into his client escrow account on the date the act of sale was passed (May 11, 1983). These funds were advanced to respondent to pay the Nardinis and to cancel outstanding liens against the property. Respondent was to pay out and cancel an outstanding first mortgage to Troy & Nichols in the amount of $21,580.32 and a second mortgage to the United States Department of Agriculture Credit Union in the amount of $5,855.44.
At the end of May, some two weeks after the $40,000 deposit, respondent's escrow account had a balance of $322.25. In July of 1983 the Nardinis learned that the mortgages had been neither paid out nor cancelled and that the credit union was continuing to deduct mortgage payments from Mrs. Nardini's paycheck. They engaged an attorney who contacted respondent and the mortgages were ultimately paid out and cancelled about two months after the funds were deposited into his escrow account. Respondent admitted that the delay in cancellation of the mortgages was his fault, yet testified that he had entrusted the matter to his office staff and was unaware that the mortgages had not been paid out and cancelled in May of 1983.
Respondent represented Finance America in its loan closings in Alexandria, Louisiana. He received a check dated July 14, 1983 for $26,999.39 from Finance America in connection with a loan made to Richard O'Neal for purchase of property from Ephraim Bowman. The check was made payable to "John R. Hickman and Richard Dale O'Neal." Respondent deposited it into his escrow account. The check had been altered to be made payable to "John R. Hickman and/or Richard Dale O'Neal" and bore only the endorsement of John R. Hickman. Subsequently, respondent's account balance dropped below $3,800. On September 9, 1983, respondent issued a check for $26,999.39 on his escrow account to Ephraim Bowman in connection with the passing of the act of sale. The check was returned for insufficient funds. Finance America issued a second check to Bowman for $26,999.39. Respondent testified that the original check was altered by an employee of Finance America, and that he deposited it into his escrow account until he could get O'Neal and Bowman together to pass the act of sale. Respondent has not repaid the $26,999.39 to Finance America.
Finance America forwarded respondent a check dated August 18, 1983 for $7,500 which was made payable to an attorney, John Dale Powers. Powers had filed garnishment proceedings against Ross Reed, a judgment debtor of Powers' client (American Bank & Trust). Reed arranged to borrow $7,500 from Finance America to pay off the judgment and informed Powers that the funds would be transferred through respondent's office. Because Powers never received payment from respondent, he continued the garnishment of Reed's wages. Finance America ultimately issued another $7,500 check directly to Powers in October of 1983. Respondent testified that he wrote on the back of the check "Pay to the order of John R. Hickman," signed his name, and cashed it at a convenience store. Powers testified that the signature of "John D. Powers" on the back of the check was not his, and he never received the proceeds of the August 18 check. Respondent averred that he did not forge Powers' signature on the check and that he assumed his office staff had sent $7,500 to Powers. Respondent has not made restitution to Finance America for the $7,500, and admitted that he used the proceeds of the check for personal expenses.
In June of 1983, Finance America made a loan to Lloyd Ussery for improvements on his property. The sum of $9,400 was forwarded to respondent who was to disburse funds periodically after inspections were made of the improvements. He deposited the funds into his escrow account and paid an initial $2,500, but never released the remaining $6,900. Finance America paid that amount directly to the contractor and building supplier. Respondent has not returned *700 the funds to Finance America, and he testified that the funds were "gone."
Respondent testified that he routinely deposited his personal income into his escrow account. He contended that his inability to forward Finance America's funds from his escrow account resulted from overpayment of loans to other clients out of the account. Respondent offered no evidence to support this contention nor others made by him.
Respondent received a total of about $41,400 from Finance America that he failed to forward to designated payees. While Finance America has reissued checks in that amount to various borrowers, respondent has not made restitution to his client.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
The record reflects that the committee proved that respondent converted his clients' funds to his own use in each of the four transactions specified herein. Subsequent to the deposit of the $40,000 Steele check into his escrow account, the account balance fell far below the amount of the deposit before respondent ultimately paid off and cancelled the mortgages. He deposited the $26,999.39 O'Neal check into his escrow account and thereafter the balance fell below that amount; when he wrote a check to Bowman for the amount of the deposit, it was returned for insufficient funds. Moreover, respondent has not repaid those funds to Finance America. Respondent cashed the $7,500 check payable to Powers, admittedly used the proceeds for his personal expenses, and has not reimbursed Finance America for that amount. He failed to turn over $6,900 that he had deposited into his escrow account in connection with the Ussery loan and later admitted that these funds were no longer available for repayment to Finance America. Considering these facts, we find clear and convincing proof that respondent converted his clients' funds to his own use in violation of DR 1-102. Furthermore, respondent's testimony that he regularly deposited his personal funds into his escrow account and that he used the proceeds of the Powers check for his personal expenses leads us to conclude that he violated DR 9-102(A) by commingling his clients' funds with his own. Respondent's failure to maintain appropriate records of the various deposits and disbursements of client funds constituted a violation of DR 9-102B(3).
Respondent failed, despite request, to promptly turn over his clients' funds in contravention of DR 9-102B(4). Moreover, he has never attempted to make restitution to Finance America for the funds he retained. Such conduct is violative of DR 1-102. Respondent's two-month delay in cancelling the mortgages on the Nardini property constituted infringement of DR 6-101(A)(3).
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Whittington, supra.
We consider that the violations found herein are serious offenses which are of sufficient gravity to warrant disciplinary action. Respondent has not made restitution to Finance America, nor has he presented to us any mitigating factors to explain his conduct. The commissioner recommended disbarment and the committee concurred. Under the circumstances, we consider disbarment to be an appropriate penalty.

*701 DECREE
For the reasons assigned, it is ordered, adjudged and decreed that the name of John R. Hickman be stricken from the roll of attorneys and his license to practice law in Louisiana be cancelled. Respondent is to bear all costs of these proceedings.
NOTES
[1] DR 1-102. Misconduct.

(a) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[2] DR 9-102. Preserving Identity of Funds and Property of a Client

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
[3] DR 6-101. Failing to Act Competently

(A) A lawyer shall not:
(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
(2) Handle a legal matter without preparation adequate in the circumstances.
(3) Neglect a legal matter entrusted to him.
[4] The commissioner found that the committee failed to prove Specification 8. The committee noted in brief to this court that it concurs with that finding and has abandoned this specification.
[5] While respondent did not file a brief in this court, he was permitted to argue the case on his own behalf.