DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Michael J. Riley, Sr., a member of said association. Prior to the commencement of this proceeding, the committee had conducted investigations of respondent’s alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the proceeding, which involved two specifications of misconduct, was sent to respondent by certified mail dated July 31, 1985.
The committee held formal investigative hearings on these specifications on September 9 and 23,1985, as provided in article 15, section 3(b) of the articles of incorporation. Respondent was present at both hearings. He appeared on his own behalf at the September 9 hearing and was represented by counsel at the September 23 hearing. Based upon the evidence adduced at these hearings, the committee was of the unanimous opinion that respondent was guilty of a violation of the laws of this state relating to the professional conduct of lawyers of sufficient gravity as to demonstrate a lack of moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in both specifications. On March 26, 1986, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent did not answer the petition. The court, by order, then appointed Mr. Milton E. Brener as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was held on July 15, 1986. Respondent was present at the hearing and was represented by counsel. The committee introduced in evidence the entire record of disciplinary proceedings, including the original pleadings filed into the record and the transcripts and original exhibits from the committee hearings, whereupon the committee rested it case. Respondent did not contest the factual allegations, expressed remorse for his actions and presented evidence of mitigating circumstances. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended a three-year suspension with readmission conditioned on full restitution. The committee filed its concurrence in the commissioner’s findings of fact and conclusions of law but opposed the commissioner’s recommendation as to the appropriate discipline, stating that either “disbarment or in the alternative a three-year suspension with additional conditions on readmission is appropriate in this case.” [1] Respondent filed neither a concurrence nor an opposition to the report of the commissioner. After oral argument before this court, the matter was *755 submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
The following allegations of misconduct have been made against respondent.
Specification No. 1 alleged:
That in your capacity as Attorney at Law you were retained to represent one James Harris in a matter involving an automobile accident. That your client, James Harris, had a policy of insurance with United States Fidelity and Guaranty Company which provided coverage for property damage, rental reimbursement and comprehensive damages. That United States Fidelity and Guaranty Company made payment for rental reimbursement and property damages resulting from the automobile accident in the amount of $7,143.97. That the other party involved in the accident was insured by the Insurance Company of North America. That on or about August of 1983, the Insurance Company of North America sent a check to United States Fidelity and Guaranty Company in the amount of $1,647.78. The Insurance Company of North America also sent a check payable to James Harris in the amount of $5,695.79 for property damages. That said $5,695.79 check for property damages was deposited in your bank account. That at the time said $5,695.79 draft from the Insurance Company of North America was issued and received and deposited, the client, James Harris, had already received $5,495.79, compensation for property damages from his own insurance company. That the client’s insurance company, United States Fidelity and Guaranty, had only received partial reimbursement from the Insurance Company of North America in the amount of $1,647.78. That the United States Fidelity and Guaranty Company was entitled to recevied [sic] the rest of their reimbursement. That the United States Fidelity and Guaranty Company was not reimbursed by you nor your client in spite of your assurances to the client that you would take care of such reimbursement. That your failure to make such reimbursement has resulted in a lawsuit being filed against you and your client to wit number 85-00257 of the docket of the Civil District Court for the Parish of Orleans. That you have engaged in conduct that is prejudicial to the administration of justice. That you have caused prejudice or damage to your client during the course of your professional relationship. That you have neglected a legal matter entrusted to you. That you have comingled [sic] and/or converted funds to your own use. That the above conduct, if proven, would constitute violations of Disciplinary Rules DR 6-101(A)(3),[2l DR 7-101(A),[3] DR 1-102(A)(5)(6) [4] and DR 9-102 [5] of the *756 Code of Professional Responsibility of the Louisiana State Bar Association.
Evidence submitted at the investigative hearings established that on June 17, 1988, James Harris’ automobile was damaged when it was hit by a car driven by Rene Cole. United States Fidelity and Guaranty Company (USF & G), Harris’ insurer, made payments totaling $7,143.97 for repairs to Harris’ car and réntal of a replacement car. Harris retained respondent to represent him in connection with the accident. Respondent filed suit on behalf of Harris against Cole and her insurer, the Insurance Company of North America. In August of 1983, the Insurance Company of North America issued two checks intended to settle Harris’ property damage claims against Cole. One check for $1,647.78 was paid directly to USF & G. Another check for $5,695.79, payable to James Harris, was sent directly to Riley. Two hundred dollars of this payment was intended to reimburse Harris for car rental costs not covered by his insurance policy. Harris owed the remaining $5,495.79 to his subrogee, USF & G, for its payment for the repairs to his car. Without authorization from Harris, respondent deposited this check in his attorney bank account. Harris testified that respondent told him that the money was in his trust account and that he would turn the money over to Harris’ insurance company as soon as he “made final negotiations” with the company. Instead, respondent’s bank records show that he used these funds to pay his own personal debts. Respondent has admitted his fault in connection with this specification. He has made no restitution.
We find that the record fully supports the conclusion that respondent commingled and converted the funds of his client, James Harris, in violation of DR 9-102 and that he neglected a legal matter entrusted to him in violation of DR 6-101(A)(3). Respondent also violated DR 7-101(A) and DR 1-102(A)(5)(6).
Specification No. 2 alleged:
That in your capacity as attorney at law, you were retained to represent one Walter Lee Martin, Jr. That in connection with your representation, the amount of $3,120.00 was recovered on behalf of your client. That you did without the authority of your client sign your client’s name as an endorsement to the check involved in the recovery. That said sum of $3,120.00 was deposited into your bank account. That of said $3,120.00, a certain portion was due and owing to your client and that he was not promptly paid the funds to which he was entitled. That while the client may have received partial payment, he was not timely paid any and all funds which were not in dispute between you and your client. That you have engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. That you have engaged in conduct that is prejudicial to the administration of justice. That you have engaged in conduct that adversely reflects on your fitness to practice law. That you have comingled [sic] and/or converted to your own use funds belonging to your client. That the above conduct, if *757 proven, would be in violation of Disciplinary Rules DR 1-102(A)(4) [6] (5X6) [7], and DR 9-102[81 of the Code of Professional Responsibility of the Louisiana State Bar Association.
Walter Lee Martin, Jr. testified that in 1982 he retained respondent to obtain the refund of a deposit Martin had given to a contractor. Martin initially paid respondent $125.00 to write a letter requesting the refund. When this proved unsuccessful, Martin testified that respondent informed him that he could obtain the refund but that it would cost Martin $500.00. Martin agreed to this, but the contract was not put into writing. As a result of negotiations with the contractor’s attorney, on October 11, 1984, respondent received a check for $3,120.00 payable to “Walter Lee Martin and his attorney Michael Riley, Sr.” in settlement of the dispute. Martin was aware of this payment and requested his share of the funds. Respondent informed him that the check had been returned for insufficient funds and had been re-deposited. He told Martin that it would take ten days for the check to clear. After receiving more excuses from respondent, Martin finally called the contractor’s lawyer and learned that the check had been deposited in respondent’s account the day he received it and that it had cleared the other bank on the next day. Someone had endorsed the check with the signature “Walter Martin.” Mr. Martin testified that he had not signed the check or authorized respondent to endorse it on his behalf. When confronted with these facts, respondent told Martin that he could not pay him because his account was overdrawn and that he would pay the debt in a few weeks. Instead of paying, respondent continued to make excuses for several months. Martin finally filed a complaint with the Louisiana State Bar Association on January 31, 1985. The next day, respondent paid Martin $1,900.00 in cash. At that time, he informed Martin that he thought Martin owed him more money than the $500.00 originally agreed upon because his usual fee was one-third of any settlement. Respondent has made no further payments to Martin. He admits his *758 fault in the matter and now acknowledges that he owes Martin $845.00.[9]
We find that the record fully supports the finding that respondent commingled and converted the funds of his client, Walter Martin, in violation of DR 9-102 and that he engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of DR 1-102(A)(4). Respondent also violated DR 1-102(A)(5) and (6).
Respondent presented the following evidence in mitigation of his conduct. He graduated from Xavier University in 1976 and the University of Tennessee College of Law in 1980. After law school, he worked briefly for the Central Intelligence Agency. Since then, he has worked for the Tennessee Valley Authority, the New Orleans City Attorney's Office, several small law firms and has practiced on his own. He has been active in the American Bar Association, the National Bar Association and the Louisiana State Bar Association. He is the state president of the Louis A. Martinette Society. At the time that the conversions occurred, respondent was undergoing serious marital and financial problems. Two well-respected members of the bar testified as character witnesses on respondent’s behalf. Additionally, Mark Gorkin, a clinical social worker who was accepted by the commissioner as an expert in psychotherapy and in stress and burn-out, testified in an attempt to mitigate or explain the alleged misconduct. Mr. Gorkin testified that when he treated respondent in July of 1984, respondent was agitated and depressed and was “experiencing a combination of work and personal burn-out” due to professional demands and marital problems. He felt that respondent’s condition may have affected his normal behavior.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
Having found respondent guilty of two specifications of misconduct, we consider that disciplinary action is warranted. Respondent was found guilty of commingling and converting funds belonging to two of his clients. At the time that respondent committed the conversions, he was a relatively inexperienced attorney who was faced with serious marital, financial and emotional problems. Moreover, respondent has been an active participant in bar association activities. He has admitted fault in connection with both charges of misconduct, expressed remorse for his actions and has made partial restitution in one case. Considering all the facts and circumstances of this case, we believe that a penalty of disbarment is too severe a sanction. Rather, we find that a three-year suspension from the practice of law conditioned on full restitution is an appropriate disciplinary action in this matter.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Michael J. Riley, Sr. be suspended from the practice of law in Louisiana for three years from the date of finality of this judgment with reinstatement conditioned upon respondent’s providing proof to the Louisiana State Bar Association that he has made full restitution of the amounts owed to his clients. Respondent is to bear all costs of these proceedings.

. In brief to this court, the committee recommended that respondent be disbarred.

. DR 6-101(A)(3) provides that:
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.

. DR 7-101(A) provides that:
(A) A lawyer shall not intentionally:
(1)Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

. DR 1-102(A)(5)(6) provides:
(A) A lawyer shall not:
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. DR 9-102 provides:
A. All funds of clients paid to a lawyer or law firm, other than advances for costs and *756 expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and *757 render appropriate accounts to his client regarding them.
4.Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
C. A lawyer may elect to create and maintain an interest-bearing trust account for clients’ funds which are nominal in amount or to be held for a short period of time in compliance with the following provisions:
1. No earnings from such an account shall be made available to a lawyer or firm.
2. The account shall include all clients’ funds which are nominal in amount or to be held for a short period of time.
3. An interest-bearing trust account may be established with any bank or savings and loan association or credit union authorized by federal or state law to do business in Louisiana and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation or the National Credit Union Administration. Funds in each interest-bearing trust account shall be subject to withdrawal upon request and without delay.
4. The rate of interest payable on any interest-bearing trust account shall not be less than the rate paid by the depository institution to regular, nonlawyer depositors.
5.Lawyers or law firms electing to deposit client funds in a trust savings account shall direct the depository institution:
a. To remit interest or dividends, net of any service charges or fees, on the average monthly balance in the account, or as otherwise computed in accordance with an institution’s standard accounting practice, at least quarterly, to the Louisiana Bar Foundation, Inc.;
b. To transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm for whom the remittance is sent and the rate of interest applied; and
c. To transmit to the depositing lawyer or law firm at the same time a report showing the amount paid to the Foundation, the rate of interest applied, and the average account balance of the period for which the report is made.

. DR 1-102(A)(4) provides:
(A) A lawyer shall not:
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. See footnote 4, supra.

. See footnote 5, supra.

. Respondent now agrees that his fee should be $500.00 and that Martin is entitled to a credit for the $125.00 that he previously paid. Because respondent has already made partial restitution of $1,900.00, the balance due Martin from the $3,120.00 settlement is $845.00.