506 So.2d 1186 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Daniel R. SCHMIDT.
No. 86-B-0821.
Supreme Court of Louisiana.
May 18, 1987.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi St. Pee, Metairie, for applicant.
Daniel R. Schmidt, William D. Beck, Jr., Baton Rouge, for respondent.

DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Daniel R. Schmidt, a member of said association. Prior to the commencement of this proceeding, the committee had conducted investigations of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the proceeding, which involved three specifications of misconduct, was sent to respondent by certified and regular mail dated October 3, 1985.[1] Mr. Schmidt was also personally served with a subpoena duces tecum requiring him to appear at the proceedings and furnish the committee with his financial records for the period of the alleged misconduct.
*1187 The committee held formal investigative hearings on these specifications on November 4 and 25, 1985, as provided in article 15, section 3(b) of the articles of incorporation. Respondent was present at both hearings. He appeared without counsel.
Based upon its investigation conducted at these hearings, the committee, by a majority vote, was of the opinion that respondent was guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. Specifically, the committee found that respondent was guilty of the misconduct described in all three specifications. On April 30, 1986, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. The court, by order, then appointed Mr. Leon J. Berggreen as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d). On September 5, 1986, the Louisiana State Bar Association petitioned this court to appoint a curator ad hoc to represent respondent because it appeared that respondent had left the state and his current address was unknown. The court ordered that William D. Beck, Jr. be appointed curator ad hoc for respondent, Daniel R. Schmidt.
A hearing before the commissioner was held on December 29, 1986. Respondent was not present at the hearing but was represented by Mr. Beck, the curator ad hoc.[2] The committee introduced in evidence the entire record of disciplinary proceedings, including the original pleadings filed into the record and the transcripts and original exhibits from the committee hearings, whereupon the committee rested its case. The curator ad hoc did not contest the factual allegations and offered no evidence of mitigating circumstances. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended that respondent be disbarred. The committee concurred with the commissioner's findings and his recommendation of disbarment. Respondent did not file an opposition to the commissioner's report. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984). The following allegations of misconduct have been made against respondent.
Specification No. 1 alleged:
That in your capacity as Attorney at Law, you were retained by Christine Stoetzner on or about October the 1st, 1984, to represent her in a matter involving personal injury. That on about February 6, 1985, you did negotiate a settlement with All State [sic] Insurance Company in the amount of $18,000.00. That you had no authority from your client to settle the matter for that sum. That you did endorse said draft with your own and your client's name and did deposit it into your bank account. That you did sign you [sic] client's name to the release in this matter without the authority to do so. That you have engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. That you have engaged *1188 in conduct that is prejudicial to the administration of justice. That you have engaged in conduct that adversely reflects on your fitness to practice law in violation of Disciplinary Rules DR 1-102(A)(4)(5)(6)[[3]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 2 alleged:
That by settling your client's case without your client's authority, by sending the releases back to the insurance company, and by negotiating the draft, all without the authority of your client and when settlement was not in an amount agreed to by your client you have caused the insurance company to take the position that the case was settled when in fact your client had not agreed to any settlement. That you have caused prejudice or damage to your client during the course of your professional relationship in violation of Disciplinary Rule DR 7-101(A)(3)[[4]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 3 alleged:
That you did deposit the $18,000.00 draft into a bank account which is not an attorney's trust account and which contains funds belonging to yourself as well as funds of client's [sic]. That on or about March 7, 1985, you did tender to your client a check on said account in the amount of $5,000.00 in partial settlement of the client's cause of action, and said check was rejected by your client. That said $18,000.00 was not deposited into a trust account until June 22, 1985. That said $18,000.00 has never been returned to the insurance company and that you have commingled and converted to your own use all or part of said $18,000.00 in violation of Disciplinary Rules DR 1-102(A)[[5]] and DR 9-102[[6]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Evidence submitted at the investigative hearings established that Daniel Schmidt was hired by Mrs. Christine Stoetzner to represent her in connection with personal injuries which she sustained in an automobile accident. Mrs. Stoetzner and her husband, Glen Stoetzner, signed an employment contract dated October 1, 1985, which granted Schmidt a power of attorney to "endorse, deposit and disburse any draft or *1189 other payments." The contract did not give respondent the authority to settle and release his client's claim. On February 6, 1985, Allstate Insurance Company issued a draft in the sum of $18,000.00 payable to the order of "Christine and Glen Stoetzner, individually and as husband and wife" as well as to the order of "Daniel Schmidt, their attorney." Upon receipt of this draft, respondent negotiated it into a general account in his name. He tendered to Allstate a release which purported to compromise the Stoetzners' claim against Allstate and its insured. Respondent signed Glen and Christine Stoetzners' names to the back of the draft as well as to the release. He also notarized their purported signatures on the release. Respondent admitted that he made a conscious effort to copy the Stoetzners' signatures. In defense of his conduct, respondent claimed that Mrs. Stoetzner verbally had authorized him to settle her claim for $18,000.00. He stated that he had signed his clients' names to the release under the mistaken impression that his employment contract gave him the authority to do so. He offered no explanation for the fact that he had notarized the false signatures. Mrs. Stoetzner testified that she had never authorized respondent to settle her case and that neither she nor her husband had signed the draft or release.
The account into which respondent deposited the Allstate draft contained funds belonging to him as well as to his client. Respondent deposited the draft for collection to his bank account on or about February 8, 1985; bank records indicate that it was credited to his account on February 25, 1985. When the draft was deposited, the balance in respondent's account was $484.01. By February 25, the date respondent's account was credited with the draft, his balance was only $10.16. In the interim, two checks written by respondent were returned by the bank due to insufficient funds. Respondent began withdrawing funds from the account almost immediately after it was credited with the draft, with the result that the balance soon dropped below $18,000.00.
On March 7, 1985, respondent tendered to Mrs. Stoetzner a check for $5,000.00. The notation "partial settlement" was written on the face of the check. Mrs. Stoetzner refused the check and discharged respondent as her attorney. She then filed a complaint with the Louisiana State Bar Association which resulted in the present proceedings. After receiving inquiries from the Committee on Professional Responsibility, respondent opened a client escrow account on June 22, 1985 with a deposit of $18,000.00. However, at the investigative hearing, respondent admitted that by September 20, 1985, he had commingled the funds in this account with his own funds. As of that date, the balance in his trust account was only $3,013.03. He has not reimbursed the $18,000.00 paid by Allstate Insurance Company.[7]
The commissioner found that at no time was respondent authorized by Mrs. Stoetzner or her husband to settle the claim for the sum of $18,000.00. This finding is fully supported by the record. Respondent saw Mrs. Stoetzner regularly and he easily could have obtained the Stoetzners' signatures if Mrs. Stoetzner had in fact authorized the settlement. Instead, respondent has admitted to copying the Stoetzners' signatures onto the draft and the release, notarizing the false signatures on the release, and negotiating the settlement draft by depositing it for collection into his general account. We find that the record fully supports the conclusion that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; engaged in conduct prejudicial to the administration of justice; and engaged in conduct that adversely reflects on his fitness to practice law in violation of Disciplinary Rules 1-102(A)(4), (5) and (6) (Specification No. 1). Additionally, respondent violated *1190 Disciplinary Rule 7-101(A)(3) by intentionally engaging in conduct which prejudiced or damaged his client during the course of their professional relationship (Specification No. 2). Respondent commingled and converted $18,000.00 of funds furnished by Allstate Insurance Company in exchange for the purported release in violation of Disciplinary Rule 9-102(A) and (B)(1), (3) and (4). Respondent also violated Disciplinary Rule 1-102(A)(1) (Specification No. 3).
Respondent did not personally appear before this court to contest the allegations against him. His curator ad hoc urged the court to consider respondent's apparent substance abuse problem at the time of his misconduct and his subsequent attempts to seek treatment for this problem as mitigating factors. It appears that respondent is presently a patient in a residential substance abuse program.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
Having found respondent guilty of three specifications of misconduct, we consider that disciplinary action is warranted. Respondent signed his clients' names to a release and a draft without authorization and fraudulently notarized the false signatures on the release. His actions have caused Allstate Insurance Company to take the position that this claim has been settled. Additionally, respondent has commingled and converted $18,000.00 of funds furnished by Allstate Insurance Company in exchange for the purported release and has not made restitution. Considering the general guidelines set forth in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), we agree with the recommendation of the commissioner, concurred in by the committee, that respondent should be disbarred.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that the name of Daniel R. Schmidt be stricken from the roll of attorneys and his license to practice law in Louisiana be cancelled. Respondent is to bear all costs of these proceedings.
NOTES
[1] The certified letters sent to respondent's post office box and home address were returned as unclaimed.
[2] Mr. Beck testified as to his attempts to contact Daniel R. Schmidt. He stated that information received from Mr. Schmidt's relatives had led him to believe that respondent might be living in the Chicago area. Accordingly, he placed an advertisement in the Chicago Tribune in an attempt to locate Mr. Schmidt. He also advertised in the Hammond Daily Star. Mr. Beck testified that Schmidt had telephoned him on December 22, 1986, one week before the commissioner's hearing. Mr. Beck informed respondent of the date, place and time of the hearing. Respondent stated that he would not be able to attend the hearing for financial and other reasons but that he did intend to make restitution in the matter. He indicated to Mr. Beck that he was living in the New Orleans area but did not divulge a specific address.
[3] DR 1-102 provides in relevant part that:

(A) A lawyer shall not:
....
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[4] DR 7-101(A)(3) provides that:

(A) A lawyer shall not intentionally:
....
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).
[5] DR 1-102(A)(1) provides that:

A lawyer shall not:
(1) Violate a disciplinary rule.
[6] DR 9-102(A) and (B) provide in pertinent part:

A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
[7] On April 19, 1985, Mrs. Stoetzner filed suit against Allstate and its insured seeking damages for her injuries sustained in the accident which was the subject of the purported release. Allstate has taken the position that her claim has been settled. Allstate's motion for summary judgment was denied on September 5, 1985. Testimony at the hearing indicated that the litigation is still pending.