481 So.2d 567 (1986)
LOUISIANA STATE BAR ASSOCIATION
v.
Gerald A. BOSWORTH.
No. 84-B-1816.
Supreme Court of Louisiana.
January 13, 1986.[*]
Rehearing Denied March 7, 1986.
*568 Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Carrick R. Inabnett, Monroe, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Frank J. Gremillion, Baton Rouge, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Gerard F. Thomas, Jr., Natchitoches, for applicant.
Robert Glass, Glass & Reed, New Orleans, Gerald A. Bosworth, Houma, (In Proper Person) for defendant-respondent.
Gerald Bosworth, in pro. per.
MARCUS, Justice.[*]
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this proceeding against Gerald A. Bosworth, a member of said association. The committee had previously conducted an investigation of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of five specifications of misconduct was sent *569 to respondent by certified mail dated October 12, 1983.
A formal investigative hearing was held on March 12, 1984, as provided by article 15, section 3(b) of the articles of incorporation. Respondent was present at the hearing and was represented by counsel and testified in his own behalf. Based upon the evidence adduced at this hearing, the committee, by a majority vote, was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; that, specifically, respondent was guilty of the misconduct set forth in Specification No. 1.
Specification No. 1 alleged:
In November of 1976, you did represent Mrs. Helen Folse, in an action relating to the death of her husband. Said action was settled and you received attorney's fees in the sum of $370,000.00. At the same time, you borrowed an additional sum of $50,000.00 from your client. You provided no collateral despite your assurances to Mrs. Folse that said note was fully secured and also failed to include a provision for attorneys [sic] fees in a note you prepared and submitted to Mrs. Folse. Said note matured on November 29, 1977, and, despite repeated requests, you have failed, refused and neglected to pay said sum of $50,000.00 to Mrs. Folse, who has been compelled to retain an attorney to assist her. Your actions in this matter constitute violations of Disciplinary Rules 1-102, 5-104(A) and 6-101(A)(3) of the Canons of Professional Responsibility for the Louisiana State Bar Association.[[1]]
The committee was of the opinion that the evidence showed that Specifications Nos. 2 and 3 should be handled by committee action and Specifications Nos. 4 and 5 should be dismissed for lack of evidence sufficient to prove a violation of the disciplinary rules. The committee deleted those charges when it filed a disciplinary action against respondent in this court on October 17, 1984, under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. Thereafter, on motion by the committee, we appointed a commissioner to take evidence and to report to this court his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was conducted on May 17, 1985. The committee offered to introduce into evidence the entire record of the earlier investigative hearing. After objection by counsel for respondent, the parties agreed to strike from the record testimony and exhibits relating to the specifications not before the court. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended that respondent be suspended from the practice of law until restitution is made and for a period of six months thereafter. The committee concurred in the commissioner's findings of fact and law and his recommendation of disciplinary action[2] and submitted the matter for this *570 court's determination. Respondent filed exceptions to the commissioner's report. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
Respondent was retained by Mrs. Helen P. Folse to represent her in an action resulting from an offshore accident in which Mrs. Folse's husband was killed. The case was tried in 1975 and settled in 1976, and on November 29 of that year, Mrs. Folse went to respondent's law office for the disbursement of the 1.1 million dollar settlement. Respondent disbursed the funds from his special account with $10,834.00 going toward costs, $612,500.00 to Mrs. Folse, $50,000.00 to each of her two minor children and $366,666.66 to respondent. After the figures had been reviewed with Mrs. Folse but before she received her check, the subject of a $50,000.00 loan to respondent came up. At the formal investigative hearing, Mrs. Folse testified that respondent asked if he could borrow $50,000.00 because he would like to purchase a boat. Although quite taken aback by the request, Mrs. Folse agreed to the loan, and respondent then issued a check to her for the amount due her minus the $50,000.00 He also gave Mrs. Folse a promissory note for $50,000.00 due in one year plus 7½% interest with the provision for attorney fees left blank. The note was signed by respondent below the name "Law Firm of Bosworth and Pellegrin."
Mrs. Folse further testified that after a year elapsed and she had received no payment of interest or principal on the note, she went to respondent's office and asked when he was going to make payment on the note. He told her, "Oh, don't worry about it, I'll take care of it. You know I wouldn't do you anything wrong." She ultimately retained an attorney and filed suit to collect from respondent in 1978. Instead of tendering payment, respondent filed exceptions to suit and then answered, denying all allegations. On September 22, 1978, the day set for trial on the matter, respondent consented to judgment in the full amount of the note ($50,000.00) plus 7½% interest and $9,000.00 attorney fees.
Mrs. Folse's attorney testified that he made numerous efforts to collect the judgment including seizure on various properties of respondent which resulted in the collection of about $5,000.00 or $6,000.00 of the debt owed Mrs. Folse. In December of 1979, he worked out an arrangement with respondent's attorney whereby respondent assigned an interest in legal fees owed to him in various suits to Mrs. Folse.
At the formal investigative hearing, respondent's testimony surrounding the loan transaction differed from that of Mrs. Folse. According to respondent, when he told Mrs. Folse during the course of conversation that all of his operating funds, including the $366,666.00 fee he earned in her settlement, were subject to a restraining order resulting from domestic litigation with his wife, she offered to loan him some money. He later testified that the fee he earned in the Folse case went to pay off indebtedness to two different banks and the remainder went to his ex-wife. Respondent further stated that at the time of the loan, he was financially solvent and believed the $50,000.00 loan would be sufficient for him to continue his practice until the domestic litigation was resolved and until receipt of substantial legal fees from several pending cases within the next few months. Instead, intervening events caused respondent's financial situation to worsen rather than improve. In January of 1977, respondent was indicted in a criminal matter and then was hospitalized for several weeks for treatment of mental and emotional problems. At the time the loan became due, respondent had pled guilty to the criminal charge and was awaiting sentencing. Respondent was eventually replaced in many of his major cases by the attorney who represented Mrs. Folse in the suit against respondent.
In August of 1980, respondent filed bankruptcy proceedings. In July of 1982, Mrs. Folse filed a complaint with the association. Five years after the loan became due, Mrs. Folse had been repaid only five or six thousand dollars of the debt owed. *571 At present, her claim is the only secured claim in the bankruptcy proceedings.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specification of misconduct. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985).
Respondent urged several affirmative defenses to the disciplinary proceedings. The defenses were argued before the commissioner. The commissioner found that the defenses lacked merit and the committee concurred in his findings. We also find no merit to the affirmative defenses set forth by respondent.[3]
DR 5-104(A) contains four phrases as follows:
A lawyer shall not
(1) enter into a business transaction with a client
(2) if they have differing interests therein and
(3) if the client expects the lawyer to exercise his professional judgment therein for the protection of the client,
(4) unless the client has consented after full disclosure.
The first three phrases state the elements of the prohibited conduct. The last phrase permits the conduct on the condition that the client consents to the transaction after the lawyer makes "full disclosure."[4]
Respondent accepts the fact that a loan is a "business transaction." He further concedes that where the transaction is a loan, the interests of the parties are inherently adverse. Therefore, the issues to be addressed are whether the business transaction was between an attorney and his client, whether the client expected the attorney to exercise his professional judgment for the client's protection with regard to the loan, and whether the client's consent was given after the attorney made full disclosure.
Respondent argues that the attorney-client relationship had terminated at the time the loan was made. Mrs. Folse came to respondent's office to obtain her portion of settlement funds from a case tried by respondent and settled post-trial. During the discussion pertaining to how the funds were to be disbursed, respondent asked Mrs. Folse if she would loan him $50,000.00. The loan was agreed to before the client received her settlement check. Before she left the office, the loan was completed and respondent had issued Mrs. Folse a promissory note evidencing the loan.
The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. Matter of McGlothlen, 99 Wash.2d 515, 663 P.2d 1330 (1983); E. Cleary, McCormick on Evidence § 88 at 208 (3d ed. 1972). It is significant that Mrs. Folse stated to *572 the committee when she was discussing why she agreed to the loan: "If you can't trust your attorney, who can you trust?" [Emphasis added.] We consider, as did the commissioner, that Mrs. Folse was justified under the circumstances in believing that respondent was her attorney at the time of the loan.
Next, we must determine whether or not Mrs. Folse expected respondent to exercise his professional judgment for her protection. Respondent argues that the loan was intended as a personal favor to respondent and not a business transaction. Thus, Mrs. Folse did not expect respondent to exercise his professional judgment for her protection. We disagree.
Mrs. Folse testified that she was unfamiliar with banking matters. When asked if she had ever lent money to people in the past, she replied: "No, sir, and he was my first case and believe me it will be the last." When asked in what capacity she knew respondent, she replied, "[a]s an attorney and that's all." She further stated that respondent had never performed any other services or work for her besides representing her in this case. Respondent was successfully handling this lawsuit which resulted in a 1.1 million dollar settlement in her favor. She was in his office to receive her settlement funds. The nature of the meeting was fraught with confidence, trust and respect for respondent's professional judgment. Respondent gave her no indication that would negate her expectation that he would exercise his professional judgment on her behalf. In fact, she testified:
[H]e said, "Helen, I have your children's money here," and he said, "I have your fee," and he said, "Before I get into that is it all right if I borrow $50,000 from you?" And I looked at him kind of dumbfounded, and he says, "Don't worry about it, I will pay you back...." Well, I said, "Well, Gerald, I guess that's all right. Well, if you can't trust your attorney who can you trust?" [Respondent replied]: "Oh, don't worry about it, Helen, I will give you a promissory note with interest and everything. I can assure you you will get paid." I said, "Well, okay." [Emphasis added.]
Under the circumstances, we conclude that Mrs. Folse expected respondent to exercise his professional judgment for her protection.
Last, we must determine if Mrs. Folse consented to the loan after full disclosure by respondent. When a lawyer enters into a business transaction with his client where they have differing interests and when the client expects the lawyer to exercise his professional judgment in that transaction for the protection of the client, the lawyer should at least advise the client to seek outside counsel. If the advice to seek outside counsel has not been given, or though given, has not been taken, then full disclosure would require the type of advice which a prudent lawyer would be expected to give the client if the client consulted the lawyer regarding such a transaction to a third person. See In Re Conduct of Montgomery, 292 Or. 796, 643 P.2d 338 (1982). In the instant case, respondent did not advise Mrs. Folse to seek outside counsel nor was she represented by independent legal counsel. Therefore, full disclosure was required.
Mrs. Folse testified that when respondent asked if he could borrow $50,000.00 and she agreed, he then replied, "Don't worry about it, Helen, I will give you a promissory note with interest and everything. I can assure you you will get paid." She also testified that she was aware that respondent and his wife were involved in domestic litigation. Notwithstanding these facts, respondent made no further disclosure to Mrs. Folse. He did not furnish her with a financial statement nor did he provide or offer to provide collateral to secure the loan. Moreover, he did not disclose his true financial situation. Although respondent testified that he had earned in excess of a million dollars in legal fees in 1976, at the time he borrowed the money from Mrs. Folse, he had no other funds with which to operate his law firm *573 except the fee he earned in the Folse case. Out of that fee, a total of $337,000.00 went to two banks to pay off loans and the remainder went to his ex-wife. Respondent further testified that his office overhead was such that he had used up the entire $50,000.00 loan for payroll by the time his community property was settled in December of 1976. We are convinced that had respondent made full disclosure to Mrs. Folse, or had Mrs. Folse sought the advice of outside counsel, the loan would not have been made. We thus conclude that Mrs. Folse's consent was not given after full disclosure by respondent.
In sum, we find, as did the commissioner and the committee, that respondent has violated the provisions of DR 5-104(A) of the Code of Professional Responsibility for the Louisiana State Bar Association.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1985).
As mitigating factors, we are cognizant of the circumstances that occurred shortly after the loan was executed. Respondent was indicted in a criminal matter and he was hospitalized for several weeks for mental and emotional problems, both in early 1977. He eventually was replaced in many of his major cases by another attorney. His financial condition worsened from 1977 until 1980 when he declared bankruptcy. Notwithstanding these factors, we note that respondent did not pay the note or even the interest on the note when it became due. When Mrs. Folse finally filed suit to collect on the note, respondent filed exceptions and defenses against the suit, one of those defenses being that the note was drawn as a partnership note and was not a personal obligation. Even after he finally consented to judgment, Mrs. Folse was forced to seize various properties before respondent secured the judgment with an assignment of his interests in attorney fees. To date, some eight years later, respondent has paid only $5,000.00 or $6,000.00 on the judgment in favor of Mrs. Folse. Her claim is now subject to respondent's pending bankruptcy proceedings. Taking into account the aggravating factors as well as the mitigating factors, we conclude that the violation found herein is of sufficient gravity to warrant disciplinary action. We do not feel that respondent should be disbarred. Rather, we consider that respondent should be suspended from the practice of law until he furnishes proof to this court that restitution for the entire amount of the loan including interest and attorney fees has been made, and for a period of six months thereafter.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Gerald A. Bosworth be suspended from the practice of law in Louisiana until he furnishes proof to this court that restitution for the entire amount of the loan including interest and attorney fees has been made, and for a period of six months thereafter.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice concurring.
The client expected the attorney, because of his position as her attorney in the litigation which produced the funds, to exercise the same degree of professional judgment for her protection in this transaction that he would have exercised for her protection in a similar business transaction with any other person. She trusted and expected him not only to pay her back, but also to *574 take all the steps that an attorney acting on her behalf would have taken to insure that she would be repaid.
Respondent's ex post facto argument is that this decision marks the first pronouncement which interprets the disciplinary rule to prohibit borrowing the proceeds of litigation recovery from clients without full disclosure. While I believe the rule prohibited such conduct with sufficient clarity, the lack of a prior judicial interpretation constitutes a mitigating circumstance which I have considered in determining penalty.
NOTES
[*] Blanche, J., recused.
[*] Blanche, J. recused.
[1] It was stipulated by counsel for the association and counsel for respondent that DR 6-101(A)(3) had no application to the conduct of respondent; therefore, the commissioner did not consider it in his report. The commissioner also found that DR 1-102 was not addressed by counsel for the association in argument and in cases cited and likewise did not consider it in his report. The remaining disciplinary rule DR 5-104(A) provides:

Limiting Business Relations with a Client. (A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.
[2] Although the committee filed a petition with this court concurring in the commissioner's recommendation of disciplinary action, in its brief and oral argument before this court, it recommended that respondent be suspended for at least eight months after the client's loan, plus interest and attorney fees, had been repaid.
[3] Respondent urges several affirmative defenses in his brief to this court. First, he urges equitable estoppel and/or laches due to the delay between the time the note became due and the filing of the complaint with the association. Although the complaint was not filed until four years after the note became delinquent, the delay was not prejudicial to respondent. Second, he argues that the circumstances surrounding the filing of the complaint resulted in an abuse of the grievance procedure in that Mrs. Folse filed the complaint at the insistence of her attorney who had a personal conflict with respondent. We agree with the finding of the commissioner that any personal conflict between respondent and Mrs. Folse's attorney is irrelevant to the proceedings before us. Last, respondent argues that a judicial construction of DR 5-104(A) that would result in a finding of a violation by him would constitute ex post facto application and result in a denial of his due process. We find that the rule became effective in 1971 prior to the actions of respondent and therefore application of DR 5-104(A) to the circumstances in this case would not be ex post facto or result in a denial of due process regardless of the judicial interpretation of the rule.
[4] The only Louisiana case concerning loans to attorneys from clients as an alleged violation of DR 5-104(A) is Louisiana State Bar Association v. Nader, 472 So.2d 11 (La.1985). In Nader, we did not decide whether the attorney violated DR 5-104(A) for the reason that the alleged conduct was in violation of DR 1-102(A)(4), engaging in conduct involving misrepresentation, and DR 1-102(A)(6), engaging in conduct which adversely reflects on the fitness to practice law.