WATSON, Justice.
This is a disciplinary proceeding by the Louisiana State Bar Association against attorney Samuel Dickens.[1] The proceeding originated with a complaint by Carl and Lenora Vincent on December 9, 1985.
The Vincents owned their home and an adjacent rental unit in Baton Rouge, Louisiana. In 1972, when the Vincents built their home, they secured a loan from First Federal Savings and Loan Association of Scot-landville in the principal amount of $20,000. In 1979, the Vincents were behind in their payments and First Federal filed a petition for foreclosure by executory process.
Lenora Vincent, a school teacher, had worked as a legal secretary for attorney Dickens. On December 18, 1979, she sought Dickens’ counsel about the foreclosure proceedings and paid him a $100 retainer.[2]
An appraisal in April of 1980 showed the fair market value of the Vincents’ property to be $52,000.[3] A mortgage certificate on the property showed: (1) a vendor’s lien by First Federal in the principal amount of $20,000; (2) a judgment in favor of Capital Bank and Trust Company for $595.08 plus interest, attorney’s fees and costs; and (3) judgments in favor of Parish Financial, Inc. totaling $8,755.26 plus interest, attorney’s fees and costs.
Another client, Myrtle Servick, gave Dickens $7,500 as a down payment on the Vincents' home. She understood that the Vincents wanted $19,000, which she regarded as a fair price. Using Servick’s money, Dickens paid First Federal $4,171.59, which made the Vincents’ loan current through *181 May 1, 1980. According to iiiouis L. Eames, Sr., chief executive officer, of First Federal, part of the mortgage payment was attributed to an escrow accoünt for payment of insurance and taxes. Dickens also paid $1,000 to Hoover and Wade, another creditor of the Vincents. However, since Myrtle Servick could not provide, additional cash, Lenora Vincent refused to vacate the property, and the sale did not materialize.
Attorney Dickens reimbursed Myrtle Services money over a period of time. His receipts show payments between February 27, 1981, and November 28, 1985.
Lenora Vincent testified that Samuel Dickens came to their home and had them sign a printed form with blank spaces. She and her husband said they did not read the instrument, which they were told would “stop the sale.” Dickens said the Vincents read the deed but admitted the purchaser’s name was blank.
Dickens added the name of his daughter, Pamela L. Dickens, as the vendee on the deed signed by the Vincents. Dickens admitted that: “I took title to the property.”[4] It was placed in his daughter’s name only for “convenience.”[5] The deed, recorded on October 9, 1980, showed a price of $24,-851.37: a down payment of $5,171.59 and assumption of $19,679.78.
In November of 1980, Mr. and Mrs. Vincent were again behind in their loan payments of $235.28 a month.[6] On November 26, 1980, Eames advised Dickens that $1,223.37 was due on the mortgage. Samuel Dickens wrote Lenora Vincent that First Federal was going to foreclose, and she had to pay him $8,723.37 to redeem the house.
On December 9, 1980, Dickens wrote First Federal stating:
Mrs. Lenora Parker Vincent has advised me that you have granted her an extension in which to bring the account up to date. Will you kindly confirm this extension. It is in the interest of my client that the account is not foreclosed on.[7]
With the benefit of the extension she had arranged, Lenora Vincent paid $500 a month from April through August of 1981 and became current on the payments to First Federal.[8] She paid the debts to Parish Financial. The Vincents also replaced the roof on their home at a cost of $4,400.
On November 15, 1985, the Vincents wrote Dickens asking him to verify what he had paid on their behalf. On November 27, 1985, Dickens replied: “It is not a matter of what you owe me. It is a matter of what I’m willing to transfer the property back to you for.” The amount named was $12,000. Dickens submitted a list of expenses, including interest, property taxes and insurance, for a total of $13,037.66.
The gravamen of the Vincents’ complaint is Dickens’ failure to substantiate the amount which he claims they owe him. There is no evidence that Dickens ever paid for insurance on the Vincents’ home. Some of the expenses he itemized in 1985, including the 1982 and 1984 insurance premiums, were paid by First Federal. After Dickens recorded his deed, the Vincents lost their homestead exemption, which substantially increased the annual tax on the property.
On November 5, 1987, the Committee on Professional Responsibility told Dickens to transfer title to the Vincents within 60 days or face disciplinary action. Dickens insisted that the Vincents pay him $6,000 plus 10% interest, the 1986 taxes of $337.86 and the 1987 taxes of $370.28. The Vincents countered with an offer to pay $6,000 plus *182 interest. They said the taxes should have been paid by the mortgage company.
At the Commissioner’s hearing on June 4, 1988, Dickens suggested that Lenora Vincent should also pay his attorney’s fee but, alternatively, offered to settle the matter for $7,500.
This is not a civil suit to collect a debt. Even if it were, it is not clear how much the Vincents owe Samuel Dickens. In 1980, Dickens paid $6,171.51 of Myrtle Services money on the Vincents’ debts.[9] Subsequently, Dickens repaid Myrtle Servick. The,Vincents are indebted to Samuel Dickens. However, the evidence is that their property is worth more than the debt. As of May 26, 1988, the balance due on the mortgage was $17,610.30.
Dickens contends that the Vincents continued paying their house note as a form of rent. Negating this argument is their replacement of the roof. First Federal was never notified of the purported assumption and Pamela L. Dickens did not make any payments on the loan. Dickens holds the title in his daughter’s name as a pledge for payment of the Vincents’ debt.
Rather than profiting from his security arrangement, Dickens has suffered a loss. However, his behavior does not fit within the parameters of permissible attorney/client conduct. He cannot ethically collect the Vincents’ debt by holding their property. Attorneys are not permitted to deal at will with clients. They are constrained by the rules governing the profession.
Dickens is charged with several violations of the Bar Association’s Disciplinary Rules, including DR 5-104(A).[10] The essence of the charges against him is his infraction of that rule, which prohibited a business transaction between an attorney and client where there was a conflict of interest and lack of full disclosure.
Even if every disputed factual issue is conceded to attorney Dickens, his business transaction with the Vincents did not meet the minimum standards of professional conduct. It deprived the Vincents of title to their $52,000 home for the sum of $6,171.59. Dickens did not use his own money but that of client Servick. Five years elapsed before Servick was fully reimbursed. Samuel Dickens violated DR 5-104(A) in 1980 and has failed to make restitution despite earnest efforts by the Bar Association.
Samuel Dickens has had a prior private reprimand. A public reprimand is appropriate for this conduct, which injured his clients. Dickens must also repair the damage to the Vincents. See Louisiana State Bar Ass’n v. Bosworth, 481 So.2d 567 (La.1986). He is ordered to reinstate the Vin-cents’ title. Any claim Dickens has for funds expended may be asserted in appropriate legal proceedings. Considering the totality of attorney Dickens’ conduct, a public reprimand and conditional suspension are lenient sanctions.
In addition to receiving a public reprimand, Samuel Dickens is suspended from the practice of law until the Vincents regain title to their property.
IT IS SO ORDERED.
All costs are assessed against Samuel Dickens.
PUBLIC REPRIMAND AND CONDITIONAL SUSPENSION ORDERED.

. The Supreme Court of Louisiana has original jurisdiction. LSA-Const.1974, Art. 5, § 5(B).

. Carl Vincent is disabled from "lateral sclerosis" and his wife handles the couple’s business affairs. Apparently, he has amyotrophic lateral sclerosis, also known as Charcot’s syndrome and Lou Gehrig’s disease.

. A later appraisal in 1982 reflected a value of $60,000.

. Tr. 253, Commissioner’s Hearing, June 4, 1988.

. Tr. 257, Commissioner’s Hearing, June 4, 1988.

. These payments were later reduced to $212.55 a month.

. Dickens admitted that "the client was actually myself.” Tr. 296, Commissioner’s Hearing, June 4, 1988.

. On December 31, 1981, First Federal sent a verification notice to Carl Vincent showing an escrow balance of $1,692.63 and taxes paid of $37.04. On April 5, 1983, the escrow account had an "overage” of $802.44.

. Dickens later paid over $1,000 in property taxes, but these taxes were apparently minimal before the Vincents lost their homestead exemption.

. DR 5-104(A), now Art. 16, Rule 1.8(a) under the Rules of Professional Conduct effective January 1, 1987, provided that:
A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.