**William C. DAVIS, Plaintiff–Appellant,**

**v.**

**Ernest L. PARKER, Defendant–Appellee.**

No. 94–40514.

United States Court of Appeals, Fifth Circuit.

July 17, 1995.

Robert E. Arceneaux, Barham & Arceneaux, New Orleans, LA, Warren D. Rush, Rush & Rush, Lafayette, LA, for appellant.

Walter C. Thompson, Jr., Charles M. Pisano, Barkley & Thompson, New Orleans, LA, Bob F. Wright, Domengeaux & Wright, P.L.C., Lafayette, LA, for appellee.

Before REYNALDO G. GARZA, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This diversity case arises out of a dispute between William C. Davis and his former attorney and business partner Ernest L. Parker, over the ownership of twenty-five percent of the stock of Campbell Wells Corporation and a related partnership, CAMPCO–1985 (collectively, "Campbell Wells"). The district court granted Parker's motion for summary judgment and dismissed all of Davis' claims against Parker on the grounds that they were prescribed by Louisiana Revised Statute 9:5605, which governs the prescriptive period for legal malpractice actions. For the reasons explained below, we vacate and remand.

I.

Ernest L. Parker, a practicing attorney in Lafayette, Louisiana, began representing William C. Davis, a Lafayette businessman, in 1976. The two later became friends. In 1984, Parker learned from fellow attorney Logan Nichols that Campbell Wells Corporation, a company that operated an oil field waste disposal facility, was for sale. Parker talked to Davis, Nichols and another client, Richard Barnett, about the possibility that they acquire the company. The four men purchased the company in September 1985, splitting their ownership interests equally. They also agreed to be equal partners in CAMPCO–1985, a partnership formed to acquire the immovable property on which the waste disposal facility was located. The acquisitions were funded by a million dollar loan from Guaranty Bank & Trust Company of Lafayette (the "Bank") and by promissory notes in the amount of $1,052,000, payable to the sellers. An additional $500,000 was borrowed from the Bank to cover start-up costs. Each man signed personal guaranties to the Bank and the sellers to secure the loans.

Despite Campbell Wells' success, Davis began to have financial problems in some of his other business ventures and by early 1986 was on the brink of bankruptcy. Parker represented Davis in the attempted work-out of his financial problems with his creditors. Parker also advised Davis as his friend and business partner. Parker warned Davis that his creditors might seize Davis' interest in Campbell Wells and suggested that Davis transfer his interest to Parker. Davis alleges that Parker agreed to hold the Campbell Wells stock "in trust" until Davis resolved his financial problems; Parker committed to return the stock to Davis upon request. In contrast, Parker contends that Davis transferred his interest to Parker outright in exchange for Parker's assumption of the debt Davis incurred in the Campbell Wells acquisition. On February 3, 1986, by a written Act of Cash Sale and Assumption, Davis transferred his twenty-five percent ownership interest in Campbell Wells to Parker. Under the instrument, which Parker prepared, Parker assumed Davis' debt and agreed to pay Davis $1000 for Davis' interest. Davis contends that Parker never gave Davis a copy of the document nor advised him to consult another attorney before signing it.

Davis eventually worked out his financial problems and avoided bankruptcy. Campbell Wells continued to thrive, and in June 1990, Parker and Nichols agreed to merge Campbell Wells with Sanifill, Inc. ("Sanifill"). Pursuant to the merger agreement, they surrendered all of the Campbell Wells stock in exchange for Sanifill stock.[1]

Davis asserts that he first became concerned about Parker's control over the transferred shares in 1988. He mentioned his agreement with Parker to an attorney working on unrelated matters, who advised him to discuss his Campbell Wells' interest with Parker. Shortly thereafter, Davis raised the subject during a meeting with Parker in Lafayette. Davis alleges that Parker was at first evasive but ultimately assured Davis not to worry because they both would make a lot of money on the Sanifill deal. Parker, on the other hand, contends that he denied the exis-

---

1. Coincidentally, the fourth partner, Barnett, had also transferred his interest in Campbell Wells to Parker on February 3, 1986. That transfer is subject to a state court lawsuit, *Marsh Eng'g, Inc.* & *Richard D. Barnett v. Ernest L. Parker & Logan Nichols*, No. 94–01129, which is currently pending before the Louisiana Third Circuit Court of Appeals.

tence of a retransfer agreement during this meeting. Davis then consulted another attorney, Mr. Robert Jackson, about the alleged retransfer agreement with Parker and asked Jackson to discuss it with Parker. Jackson told Davis that when he asked Parker about the agreement, Parker denied its existence. On September 14, 1990, Parker visited Davis and his wife at their home in Austin. Davis again brought up the agreement, and a heated argument ensued. Three weeks later, Davis engaged his present counsel, Mr. Warren Rush.

Davis filed this suit more than a year later on November 21, 1991.[2] In his complaint, as amended on January 17, 1992, Davis seeks damages or, in the alternative, a judgment declaring him the owner of a quarter of the Sanifill stock received in the merger with Campbell Wells. The complaint also seeks an accounting and a rescission of the 1986 agreement.

Following a preliminary round of motions, Parker moved for summary judgment on the ground that Davis' claims were time-barred under Louisiana Revised Statute 9:5605, the statute of limitations for legal malpractice actions. The district court granted Parker's motion and dismissed Davis' suit with prejudice. Davis now appeals the dismissal of his action predicated on the following theories: breach of contract, rescission, detrimental reliance and nullity.

## II.

We review a grant of summary judgment *de novo,* using the same standards that guided the district court. *Cherokee Pump & Equip., Inc. v. Aurora Pump,* 38 F.3d 246, 249 (5th Cir.1994). Summary judgment is proper if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The district court determined that section 5605, which became effective on September 7, 1990, should be applied retroactively to Davis' suit and when applied in this manner, Davis' suit was time barred. Section 5605, entitled "Actions for legal malpractice," provides, in relevant part:

A. No action for damages against any attorney at law ..., whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La.Rev.Stat.Ann. § 9:5605(A). On September 21, 1992, the statute was amended to add the following:

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect....

*Id.* § 9:5605(B).

The district court noted that Davis' claims were timely under Louisiana law as it existed when Davis' causes of action arose, but determined that section 5605 applied retroactively to bar Davis' claims.[3] In this appeal,

---

**2.** Davis originally sued both Parker and Nichols but later dismissed his actions against Nichols.

**3.** We agree that Davis' claims are timely if section 5605 is not applicable. If section 5605 is not applicable, the shortest prescriptive period for any of Davis' claims asserted on appeal is five years. *See, e.g.,* La.Civ.Code Ann. art. 3499 (personal action subject to liberative prescription of ten years); La.Civ.Code Ann. art. 2032 (nullity

action subject to five-year prescriptive period); *Stokes v. Georgia–Pacific Corp.,* 894 F.2d 764, 770 (5th Cir.1990) (action for detrimental reliance subject to ten-year prescriptive period); *Currie v. Schon,* 704 F.Supp. 698, 701 (E.D.La. 1989) (nullity action subject to five-year prescriptive period); *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts,* 354 So.2d 192, 195 (La.1978) (breach of contract action subject to ten-year prescriptive period).

Davis contends the district court erred in determining, first, that section 5605 applies generally to all of Davis' claims and, second, that section 5605 should be applied retroactively to bar Davis' causes of action; all of which arose before the effective date of the statute.

## III.

### A.

■ We consider first Davis' preliminary argument that section 5605 does not apply to any of his causes of action preserved on appeal. As mentioned above, the statute applies to actions "for damages against any attorney at law duly admitted to practice in this state, ... whether based upon tort, breach of contract, or otherwise, arising out of an engagement to provide legal services." La.Rev.Stat.Ann. § 9:5605(A). As to the breach of contract, rescission for failure of consideration, and detrimental reliance claims, Davis argues that they are unrelated to Parker's capacity as an attorney and thus do not "arise out of an engagement to provide legal services." As to the nullity claim, Davis argues that although it is dependent on Parker's capacity as an attorney, it is not an action for damages and thus does not fall within the scope of section 5605. The district court rejected these arguments, concluding that section 5605 applies to "all actions against an attorney for his actions in any capacity."

Parker contends that the clear language of section 5605 supports the district court's interpretation. He argues that the language in section 5605(A) covering all actions "whether based upon tort, or breach of contract, or otherwise" reflects this intent. He also points to paragraph (C), which provides: "Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state ..., the prescriptive

and peremptive period shall be governed exclusively by this Section." La.Rev.Stat.Ann. § 9:5605(C).

But the Louisiana Supreme Court's decision in *Branch v. Willis–Knighton Medical Ctr.,* 636 So.2d 211, 214 (La.1994), requires a more narrow interpretation of the statute's scope. In *Branch,* the Court addressed a nearly identical question with respect to the scope of La.Rev.Stat.Ann. § 9:5628, which provides a prescriptive period for medical malpractice actions.[4] The plaintiff, Branch, filed a products liability action against a hospital alleging that he contracted hepatitis from contaminated blood the hospital provided him during surgery. The defendant argued that the claim was prescribed under section 5628. The Court disagreed, reasoning that "the title, 's.5628 Actions for medical malpractice,' and all of the other earmarks of the statute indicate the legislature intended to deal only with actions traditionally classified under the generally prevailing meaning of 'medical malpractice,' viz, suits based on negligence, breach of express agreement, abandonment, assault or lack of informed consent." *Id.* at 214. The Court explained that given the historical grounding of medical malpractice claims in both tort and contract, the statute's "application to actions 'based upon tort, breach of contract, or otherwise' evinces a legislative intent to cover every kind of malpractice action but does not display an aim to affect suits outside this field." *Id.*

The Court noted that the words "acts," "omissions," and "neglect" referred to professional negligence. *Id.* The Court then interpreted "arising out of patient care" to mean damages "result[ing] from a physician's failure to exercise the 'standard of care' required of him in the treatment of a patient." *Id.* The Court also referred to two additional considerations that supported its narrow construction of the statute: (1) that "[t]here is no evidence that the legislature intended

---

4. Section 5628 provides:
   No action for damages for injury or death against any physician, dentist, or hospital ... whether based upon tort, breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect;

provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. La.Rev.Stat.Ann. § 9:5628(A).

by R.S. 9:5628 to curb any type of litigation other than traditional medical malpractice actions," *id.* at 215; and (2) that "because the statute grants immunities or advantages to a special class in derogation of the general rights available to tort victims, it must be strictly construed against limiting the tort claimants' rights against the wrongdoer." *Id.* at 217.[5]

While the above language indicates the narrow construction the Court placed on this statute, the result the Court reached demonstrates this construction even more vividly. Despite the close relationship between "patient care" and the provision of blood to a patient, the Court declined to apply section 5628 because the patient's action for damages was styled as a strict products liability action.

The Louisiana Supreme Court's decision in *Branch* compels our conclusion that the district court's determination that section 5605 applies to all claims against attorneys in any capacity was overbroad. Section 5605 contains the same "earmarks" as section 5628: (1) the title is "Actions for legal malpractice;" (2) the language specifies "acts," "omissions," and "neglect"; and (3) the words "tort, contract, or otherwise" represent an effort to avoid a recurring conflict in legal malpractice cases over whether legal malpractice actions sound in tort (for which the prescriptive period was previously held to be one year) or in contract (for which the prescriptive period was previously held to be ten years).[6] Read in its entirety, section 5605 reflects an intent to cover all actions for damages predicated on traditional legal malpractice, but not more.

## B.

■ Our task, then, is to determine whether Davis' various claims against Parker should be classified as traditional legal malpractice claims. Generally, legal malpractice claims are

those bases of liability that are unique to and arise out of the rendition of legal services. The test to distinguish malpractice from other wrongs is whether the claim primarily concerns the quality of legal services. Therefore, actual fraud by an attorney should not be considered legal malpractice since such conduct is neither unique to the legal profession nor does it usually concern the quality of professional services any more than does dishonesty of a layperson.... Clearly within the definition of legal malpractice is the negligent rendering of legal services.

I Ronald E. Mallen & Jeffery M. Smith, LEGAL MALPRACTICE § 1.1, at 3 (3d ed. 1989). Louisiana law defines legal services broadly "to include 'services provided by one in the ordinary course of the practice of [law] on behalf of another.'" *Gerdes v. Estate of Cush*, 953 F.2d 201, 205 n. 8 (5th Cir.1992) (quoting *Jensen v. Snellings*, 841 F.2d 600 (5th Cir.1988)). Thus, legal malpractice actions, like medical malpractice actions, have traditionally addressed the quality of the professional service.

### 1. The Claims for Breach of Contract, Rescission and Detrimental Reliance

■ Davis argues that his first three claims preserved on appeal—breach of contract, rescission and detrimental reliance—are against Parker in his capacity as a businessman, not as an attorney, and thus do not "arise out of an engagement to provide legal services." Davis contends that his claims are not levelled at a deficiency in the quality of Parker's legal services, but rather are bottomed on a contention that Parker refused to honor his agreement as a business partner to retransfer the Campbell Wells interest.

Parker admitted in his deposition that he rendered no legal advice to Davis concerning whether the terms of the agreement were in his best interest because "[w]hen the transaction was done, it was as a businessman." Similarly, Parker in his memorandum in op-

---

5. *See also Maltby v. Gauthier*, 506 So.2d 1190, 1193 n. 5 (La.1987) ("In the absence of a clear indication of legislative intent, prescriptive statutes which can be given more than one reasonable interpretation should be construed against the party claiming prescription.").

6. *See Lima v. Schmidt*, 595 So.2d 624, 628 (La. 1992); *Cherokee Restaurant, Inc. v. Pierson*, 428 So.2d 995, 999 (La.App. 1st Cir.), *writ denied*, 431 So.2d 773 (La.1983).

position to Davis' motion for summary judgment on the nullity claim stated that: "Even if Parker was acting as an attorney for Davis in connection with other matters at the time ... he was not Davis' attorney in the purchase and sale of the stock.... Parker has testified that he was acting as a businessman, not as Davis' attorney, in buying the stock for him."

We are unable to accept Parker's argument that these are legal malpractice claims simply because they are related to an attorney/client relationship. Under the reasoning of the Louisiana Supreme Court in *Branch*, a lawyer's participation in the transaction does not make section 5605 automatically applicable. Rather, we must examine the nature of the transaction and the underlying basis of the claim. In *Branch*, furnishing tainted blood was closely related to patient care. Nonetheless, the Court reasoned that this conduct by a hospital/health care provider covered by section 5628 did not subject plaintiff's products liability claim to the medical malpractice prescriptive rule.

Similarly, Parker's status as Davis' attorney does not render Davis' claims based on Parker's violation of his oral agreement per se subject to section 5605's prescriptive period. Although Parker's legal advice may have contributed to Davis' decision to transfer the stock to Parker, the stock could have been transferred to a non-lawyer and the same actions could have been brought against that party. That an attorney happens to be the transferee does not grant him the benefit of a one-year prescriptive period when a non-lawyer entering into the same agreement would be subject to a ten-year prescriptive period. Davis' fundamental complaint against Parker on these legal theories does not concern the quality of Parker's legal services; rather Davis complains that Parker reneged on his promise to retransfer the Campbell Wells stock to Davis. Thus, we conclude that Davis' breach of contract, rescission and detrimental reliance claims are not prescribed under section 5605.

### 2. The Nullity Claim

■ Davis' fourth claim preserved on appeal—nullity of the contract based on a breach of fiduciary duty—presents a closer question because it is arguably more closely related to Parker's capacity as an attorney. Under Louisiana law, an agreement is a nullity where it "derogate[s] from laws enacted for the protection of the public interest, violate[s] a rule of public order, or produce[s] a result prohibited by law or public policy." *Daigle v. Clemco Indus.*, 613 So.2d 619, 624 (La.1993).[7] Davis argues that the contract transferring his stock in Campbell Wells to Parker was entered into in violation of former Disciplinary Rule 5–104(A) of the Louisiana Code of Professional Responsibility, which provides:[8]

---

7. Several articles of the Louisiana Civil Code govern actions for nullity:

**Art. 2030. Absolute nullity of contracts**
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.
**Art. 2031. Relative nullity of contracts**
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
Relative nullity may be invoked only by those persons for whose interest the ground of nullity was established, and may not be declared by the court on its own initiative.
**Art. 2032. Prescription of action**

Action for annulment of an absolutely null contract does not prescribe.
Action for annulment of a relatively null contract must be brought within five years from the time the ground for nullity ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud....
**Art. 2033. Effects**
An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be through an award of damages.

8. The Code of Professional Responsibility has since been replaced by the Rules of Professional Conduct. Because the conduct at issue here occurred before the adoption of the Rules, the Code applies. *Louisiana State Bar Ass'n v. Alker*, 530 So.2d 1138, 1139 n. 2 (La.1988).

A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

■ Davis argues that under Louisiana law, when an attorney enters into a business transaction with a client, the attorney has a fiduciary obligation to either fully disclose the relevant information to the client or advise the client to seek outside counsel before completing the transaction. *See Louisiana State Bar Ass'n v. Bosworth*, 481 So.2d 567, 572 (La.1986). Failure to do so may constitute a breach of fiduciary duty by an attorney if an attorney/client relationship exists, regardless of whether the attorney entered the particular transaction as a businessman. *See id.* at 571. Louisiana courts have annulled contracts where an attorney, by entering into the agreement with a client, breaches his fiduciary duty. *See Succession of Crowe*, 602 So.2d 243, 246–47 (La.App. 2d Cir.1992) ("A transaction between an attorney and a client is closely scrutinized and may be annulled even though the same transaction with a non-client without overreaching may be found unobjectionable."); *Succession of Cloud*, 530 So.2d 1146, 1150 (La.1988) ("[W]hen an attorney enters into a contract with his client in direct and flagrant violation of a disciplinary rule and a subsequent civil action raises the issue of enforcement (or annulment) of the contract, this court ... should prohibit the enforcement of the contract which directly contravenes the Code adopted by this court to regulate the practice of law.").

With this background, we consider whether section 5605 governs Davis' nullity claim. As an initial matter, we note that there is some question whether Davis has sufficiently alleged a claim for nullity. We, of course, determine from the allegations in the complaint which prescriptive period is applicable. *See Starns v. Emmons*, 538 So.2d 275, 277

(La.1989). Assuming without deciding that Davis' petition asserts an action for nullity,[9] we conclude that it also falls outside the scope of section 5605.

■ Section 5605 applies to "any action for *damages*." La.Rev.Stat.Ann. § 9:5605(A) (emphasis added). Ordinarily, the objective of a nullity action is not to recover damages. Rather, a nullity action is designed to restore the plaintiff to his pre-contract state, as if the contract had never existed. La.Civ.Code Ann. art. 2033. Only if restoration in kind is impossible or impracticable can the court award damages. *Id.* We conclude that the language in section 5605 limiting its application to "action[s] for damages" reflects an intent not to cover the unique nullity action which is not designed to afford damages to a plaintiff.

Parker recognizes that the preferred remedy for a nullity action is restoration in kind but contends that Davis' prayer for damages in his complaint nevertheless renders the nullity claim an "action for damages." We disagree. In his complaint, Davis does pray for damages, on the assumption that he cannot be restored to his pre-agreement position because the Campbell–Wells stock was sold and replaced by Sanifill stock. However, he also prays in the alternative for a declaration that he is a 25% owner of Sanifill stock, should the court determine that it is possible to restore him to his pre-contract position. Neither party has demonstrated that Davis could not be awarded restoration in kind even though the Campbell Wells stock no longer exists. At least one Louisiana court has suggested in a similar factual setting involving a fiduciary relationship between business partners that restoration in kind is possible where the shares of the original partnership had been exchanged for shares in a different partnership. *See W.A. McMichael Constr. Co. v. D & W Properties, Inc.*, 356 So.2d 1115, 1124–25 (La.App. 2d Cir.), *writ denied*, 359 So.2d 198 (La.1978).

---

9. The most prominent feature of an action for nullity is the relief it permits: the contract is declared null and deemed never to have existed. In his complaint, Davis never requested the court to annul the contract. But the parties in briefing Davis' motion for partial summary judgment on the nullity claim assumed that an action for nullity was before the court. In any event, Davis could on remand in all likelihood amend his petition to correct any deficiencies.

Moreover, even if the court ultimately determines that damages are the only feasible remedy in this case, we are not persuaded that the Louisiana courts would adopt one prescriptive period in a nullity action for which restoration in kind is feasible and a different prescriptive period for a nullity action for which the court determines that restoration in kind is impossible.[10] Thus, the district court erred when it held that Davis' nullity claim was prescribed under section 5605.

### IV.

For the reasons stated above, we vacate the district court's judgment and remand this case for further proceedings consistent with this opinion.[11]

VACATED and REMANDED.

---

**10.** Although we need not decide the issue, it is not completely clear that section 5605 applies to a breach of fiduciary duty claim, the underlying basis of Davis' nullity action. In *Gerdes v. Estate of Cush*, 953 F.2d 201, 204–05 (5th Cir.1992), this court distinguished an action for breach of fiduciary duty from an action for legal malpractice. The court noted that while a legal malpractice claim requires a showing of the negligent rendition of services, a breach of fiduciary duty claim, in contrast, "requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's obligation." *Id.* at 205. Given the Louisiana Supreme Court's narrow reading of section 5628 in *Branch*, it is not clear to us that a breach of fiduciary duty claim can be characterized as a "traditional legal malpractice" claim.

**11.** Davis also asks that we reverse the district court's denial of his motion for partial summary judgment on his nullity claim. We agree with the district court that issues of material fact preclude this relief.