_JjPER CURIAM.*
This matter arises from one count of formal charges filed by the Office of Disci *713 plinary Counsel (“ODC”) against respondent, Johnnie A. Jones, Jr., an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
In February 1997, Hannah Denise Lingo contacted respondent with regard to instituting divorce and custody proceedings on her behalf on a pro bono basis. No written contract was signed between the parties, but Ms. Lingo later testified that respondent agreed to proceed with the case “when he had the time.” However, respondent took no action in the case.
In June 1997, Ms. Lingo traveled with her boyfriend, a professional truck driver, to California. Prior to and during the trip, Ms. Lingo attempted to contact respondent weekly to discuss the status of her ease. According to Ms. Lingo, she was unable to speak with respondent and he failed to return her telephone calls.
Upon returning to Louisiana in August 1997, Ms. Lingo visited respondent’s office. At that time, Ms. Lingo paid respondent $750 to handle the uncontested divorce and custody proceeding, in the belief that respondent would take action in the matter if she were a paying client. Two weeks later, Ms. Lingo inquired about the 12status of her case. Respondent advised her that the divorce petition had been filed and was “on the judge’s desk.” In fact, respondent had not filed the petition for divorce as he represented to Ms. Lingo, and did not file the petition until October 8,1997.
Thereafter, Ms. Lingo continued to call respondent almost daily to discuss the status of her case. Respondent advised her the matter was still pending before the court. In March 1998, Ms. Lingo contacted the clerk of court’s office directly regarding the delay in the disposition of her case. She learned at this time that her husband had filed an answer six months earlier on October 30, 1997, and that the court had been waiting for her attorney to file a rule to show cause requesting a hearing in the matter.
After obtaining this information, Ms. Lingo terminated respondent’s services. On March 16, 1998, she retained other counsel and, the following day, was granted a court hearing where she was later awarded custody of her minor child. The following month, the divorce was granted.
DISCIPLINARY PROCEEDINGS

Formal Charges

Ms. Lingo filed a complaint with the ODC. After investigation, the ODC filed formal charges against respondent alleging several violations of the Rules of Professional Conduct, including violations of Rule 1.3 (neglect of a legal matter) and Rule 1.4 (failure to keep a client reasonably informed).[1] Respondent filed an answer denying any misconduct. Accordingly, the matter was scheduled for a formal hearing before the hearing committee.

13Recommendation of the Hearing Committee

At the hearing, Ms. Lingo, respondent, and several other witnesses testified. At the conclusion of the hearing, the hearing committee filed its written recommendation with the disciplinary board, finding clear and convincing evidence of violations of Rule 1.3 and Rule 1.4. The committee also concluded respondent failed to place Ms. Lingo’s $750 fee in trust, and failed to account for this fee or refund the unearned portion of the fee at termination of representation.
Based on these findings, the committee recommended respondent be publicly reprimanded. It further recommended he be placed on supervised probation for a period of six months subject to several conditions, including participation in arbitration regarding the fee.

*714
Disciplinary Board Recommendation

The disciplinary board agreed with the hearing committee’s factual findings that respondent neglected Ms. Lingo’s case and failed to communicate with her. The board also observed that respondent failed to make efforts to resolve the dispute over the fee as mandated by Rule 1.5(f)(6).
In addressing the issue of sanctions, the board found respondent knowingly violated duties owed to his client and the profession, and that the actual injury was significant with Ms. Lingo’s domestic proceedings being unnecessarily delayed for an extended period of time and the fee dispute never being resolved. Accordingly, the board proposed respondent be suspended from the practice of law for ninety days, fully deferred, followed by a one year period of probation, with the condition that respondent submit to financial auditing, fee arbitration and attend ethics school.[2]
^Respondent filed a timely objection in this court to the board’s recommendation. Accordingly, the matter was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
The record supports the hearing committee’s factual finding that respondent neglected Ms. Lingo’s case and failed to properly communicate with her.[3] Respondent’s actions caused significant injury to Ms. Lingo by delaying her divorce and retarding her efforts to gain custody of her minor child.
With regard to the fee dispute, we conclude there is insufficient evidence in the record to determine whether respondent earned this fee in its entirety, or whether any portion of the fee should be refunded. Respondent has agreed to submit to fee arbitration through the Louisiana State Bar Association. We believe it is preferable to resolve the fee dispute in this manner, rather than addressing it in a disciplinary context.
^Turning to the appropriate sanction for respondent’s neglect of a legal matter and failure to communicate, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
*715 As the disciplinary board observed, respondent’s neglect of Ms. Lingo’s case is serious in that it delayed her divorce and retarded proceedings in which she sought custody of her child. However, respondent’s actions caused her no irreparable harm, as she was able to obtain her divorce and receive custody of her child shortly after she discharged respondent and hired new counsel.
The only significant aggravating factor present in this case is that respondent, who was admitted to the bar in 1983, has substantial experience in the practice of law. This factor is offset by the mitigating factor of respondent’s lack of any disciplinary record during his legal career. Though not strictly a mitigating factor, we also take notice of respondent’s willingness to participate in fee arbitration with his former client.
Under these circumstances, we conclude the deferred ninety day suspension,' followed by a one-year period of supervised probation with conditions, is an appropriate sanction. Accordingly, we will adopt the recommendation of the disciplinary board.
| .DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Johnnie A. Jones, Jr. be suspended from the practice of law in Louisiana for a period of ninety days. This suspension shall be fully deferred, subject to a one-year period of supervised probation governed by the conditions proposed by the disciplinary board. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 James C. Gulotta, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.

. The formal charges also alleged violations of several rules relating to the accounting and refund of fees.

. The board recommended the following probationary conditions: •
(1) A probation monitor will be appointed to monitor respondent's trust account and submit quarterly reports to the ODC during the period of probation;
(2) Respondent shall attend Ethics School conducted by the LSBA's Practice Assistance Improvement Program; and
(3) Respondent shall honor his commitment to submit to the LSBA’s Fee Arbitration Program and, through this program, reach a final resolution of the fee dispute with Ms. Lingo.

. We recognize respondent takes the position that no attorney-client relationship formed in February 1997, when Ms. Lingo first approached him about taking the case on a pro • bono basis. However, respondent's position is contrary to the testimony of Ms. Lingo and other witnesses, who clearly suggested Ms. Lingo believed an attorney-client relationship existed at that time. It is well settled that the existence of the attorney-client relationship turns largely on the client's subjective belief that it exists. Louisiana State Bar Ass’n v. Bosworth, 481 So.2d 567 (La.1986). In any event, even accepting respondent's position that no attorney-client relationship existed in February 1997, such a relationship clearly existed by August 1997, when Ms. Lingo paid respondent $750 to handle the matter. Nonetheless, respondent took no action in the case until October 1997, when he filed the petition for divorce. Thereafter, he took no further action in the matter for the five months prior to his termination, but deliberately attempted to conceal his inaction by failing to respond to Ms. Lingo's many requests for information regarding the status of her case.