| | | |
|---|---|---|
| **LAWRENCE STEVEN MOPSIK** | * | **NO. 2024-CA-0189** |
| | * | |
| **VERSUS** | * | **COURT OF APPEAL** |
| | * | |
| **KRISTINA ANGELINA GALJOUR** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

* * * * * * *

CONSOLIDATED WITH:

LAWRENCE STEVEN MOPSIK

VERSUS

CHRISTOPHER KANE AND LEGACY
LAW CENTER, L.L.C.

CONSOLIDATED WITH:

NO. 2024-CA-0190

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-12586, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge
Rachael D. Johnson)

George R. Ketry, Jr.
KETRY LAW FIRM LLC
19524 Highway 36
Covington, LA 70433

Richard James Richthofen, Jr.
RICHTHOFEN & ASSOCIATES, LLC
3900 Canal Street
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLANT

Gustave A. Fritchie, III
Christopher H. Irwin
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130

      COUNSEL FOR DEFENDANTS/APPELLEES

              **AFFIRMED**

September 25, 2024

This is a suit by a former client—Lawrence Steven Mopsik ("Mr. Mopsik")—against his former attorneys—Christopher Kane ("Mr. Kane") and Legacy Law Center, L.L.C. ("Legacy") (collectively "Defendants")—for damages. From the trial court's judgment dismissing the suit as prescribed, Mr. Mopsik appeals. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2010, Mr. Kane began practicing law in Louisiana as a member of the Rabalais Law Firm ("Rabalais"), an estate-planning firm. While working at Rabalais, in 2013, Mr. Kane prepared a revocable trust for Mr. Mopsik's parents ("Parents"). Mr. Mopsik was the trust's sole named beneficiary. Mr. Kane structured the trust so that it would terminate after Parents' deaths; at that time, Mr. Mopsik would become the sole owner of the trust's proceeds.[2] In 2015, Parents

---

[1] The factual background is derived from the evidence introduced at the hearing on the prescription exception, which included affidavits of Mr. Kane and Mr. Mopsik, and correspondence exchanged between them. No testimony was taken at the hearing.

[2] According to Mr. Kane, Parents never indicated to Mr. Kane that Mr. Mopsik was mentally impaired or incapable of managing his own affairs. Mr. Kane had numerous conversations with Mr. Mopsik, who always appeared to be competent to manage his own economic affairs.

1

died. In 2016, Mr. Mopsik contacted Mr. Kane for assistance regarding his mother's succession. After Mr. Kane completed the succession work, Mr. Mopsik requested that Mr. Kane assist him with his own estate planning.

During this same period, Rabalais hired Kristina Angelina Galjour ("Ms. Galjour") as a legal assistant. Ms. Galjour misrepresented to Rabalais that she had received a law degree from the University of Mississippi. Mr. Kane neither hired Ms. Galjour, nor investigated her background. In May 2016, Rabalais assigned Ms. Galjour to Mr. Kane as his legal assistant. Thereafter, Ms. Galjour competently performed her job duties.

In October 2016, Mr. Kane left Rabalais to establish his own law firm—Legacy. Mr. Kane asked Ms. Galjour to join Legacy as his legal assistant; she accepted his offer. One year later, in October 2017, a real estate agent, Eileen Wallen ("Ms. Wallen"), left a voice message at Legacy requesting information about selling the properties that Mr. Mopsik had inherited from Parents. Ms. Galjour relayed this message to Mr. Mopsik; he replied that he did not want any information given to Ms. Wallen and that he was not interested in selling his properties.

In February 2018, Ms. Galjour advised Mr. Kane of Mr. Mopsik's request that he create a trust for him like the one he had created for Parents and that Mr. Mopsik wanted to know what the attorney's fee would be. After consulting with Mr. Kane, Ms. Galjour informed Mr. Mopsik that the attorney's fee would be $3,750. Shortly thereafter, while Mr. Kane was away from the office, Mr. Mopsik

dropped off a check for $3,750 payable to Legacy. Mr. Mopsik advised Ms. Galjour that he needed more time to decide whom he wanted to designate as his beneficiaries. Months passed without Mr. Mopsik contacting Legacy.

In June 2018, the Office of Disciplinary Counsel for the Louisiana Attorney Disciplinary Board ("Disciplinary Counsel") notified Mr. Kane that Ms. Galjour had never attended law school and that some of his clients had asserted that Ms. Galjour was holding herself out as a practicing attorney. Later that day, Mr. Kane discovered that Mr. Mopsik had donated immovable property that he inherited from Parents to Ms. Galjour in September 2017. The donated property was located on Nashville Avenue in New Orleans, Louisiana (the "Property Donation").

The following day, June 13, 2018, Mr. Kane went to Mr. Mopsik's house to discuss the Property Donation with him. At that meeting, Mr. Mopsik admitted making the Property Donation. According to Mr. Kane, Mr. Mopsik told him that he made the Property Donation because Ms. Galjour was always nice to him. Mr. Mopsik explained that he wanted to do something nice for her. After the meeting with Mr. Mopsik, Mr. Kane immediately terminated Ms. Galjour's employment.

Two days later, on June 15, 2018, Mr. Kane sent a letter (the "Letter") to Mr. Mopsik, advising him of the following:

- That the Property Donation was improper, unethical, and possibly unlawful given that Ms. Galjour worked for Mr. Kane at the time the Property Donation was made and that Mr. Mopsik was a client;

- That Ms. Galjour was no longer Mr. Kane's employee (paralegal);

- That Mr. Mopsik had a potential legal malpractice claim against Mr. Kane and Legacy based on Ms. Galjour's actions;

- That Mr. Mopsik should hire independent counsel to review the propriety of Ms. Galjour's actions and any claims that he might have against Mr. Kane, Legacy, and Ms. Galjour; and

- That Mr. Kane would pay any attorney's fees and costs associated with unwinding the Property Donation.[3]

Shortly after sending the Letter, Mr. Kane received two handwritten letters from Mr. Mopsik—dated June 13 and June 18, 2018—permanently terminating Mr. Mopsik's attorney-client relationship with Mr. Kane and Legacy. In the letters, Mr. Mopsik also demanded a return of the $3,750 attorney's fee that he paid for creating his trust, listed various grievances about Mr. Kane's alleged shortcomings as his lawyer, and alleged that Mr. Kane had treated him unfairly. Mr. Mopsik also advised Mr. Kane that he had consulted with independent counsel about how to deal with these issues. Mr. Mopsik insisted that Mr. Kane not make any further contact with him.

On June 19, 2018, Mr. Kane sent a letter to Mr. Mopsik; he included with the letter a refund of the $3,750 attorney's fee. After that date, Mr. Kane had no further contact with either Mr. Mopsik or Ms. Galjour.

On January 28, 2020, Mr. Mopsik filed this suit against Defendants. In his petition, he averred that Defendants were liable to him based on the following four counts (theories of recovery):

> COUNT ONE: *Negligent Hiring, Entrustment, and Retention*: Negligent in hiring Ms. Galjour; placing her in a sensitive position, where she would have access to client's personal financial information; and failing to conduct a background check of Ms. Galjour, which would have revealed that she was unsuitable for such a position;

---

[3] The Letter's full content is quoted elsewhere in this opinion.

4

COUNT TWO: *Negligent Supervision*: Negligent in supervising Ms. Galjour;

COUNT THREE: *Direct Negligence*: Direct negligence in legal representation of Mr. Mopsik through Ms. Galjour's wrongdoings; and

COUNT FOUR: *Respondeat Superior*: Derivative liability for Ms. Galjour's wrongdoing as her former employer; and Ms. Galjour's wrongdoing was in the course and scope of her work for Defendants.[4]

---

[4] In each of the four counts, Mr. Mopsik incorporated the same alleged background facts, which were as follows:

- In the spring of 2017 and particularly March of 2017, [Mr. Mopsik] was a client of [Mr. Kane], an Attorney licensed to practice law in the State of Louisiana who owned and operated [Legacy], which held itself out to the public as a Law Firm specializing in providing comprehensive estate planning services;

- Mr. Mopsik sought Mr. Kane's assistance in handling of a substantial estate that he inherited from Parents that had a gross value in excess of two million dollars. The specifics and particulars of this Estate were made known to Mr. Kane, who shared this information with Ms. Galjour [who was Mr. Kane's paralegal] and allowed her to have direct and unfettered contact with Mr. Mopsik in the handling of his financial affairs;

- Ms. Galjour was allowed by Mr. Kane to hold herself out as an attorney by representing herself as one in her office email account and in other various correspondence with Mr. Mopsik;

- Ms. Galjour specifically used her position with Mr. Kane to convince Mr. Mopsik that she was an attorney using this position of trust to divert substantial amounts of money and property from Mr. Mopsik's estate to herself for her use and that of her husband, John Galjour;

- Thereafter, through her position with Mr. Kane, Ms. Galjour was able to convince Mr. Mopsik that it was in his best interest to donate [the Property] to her. Mr. Mopsik relied on this position of authority which Mr. Kane had placed Ms. Galjour, in relation to his financial affairs when he executed this donation;

- Subsequently, Ms. Galjour convinced Mr. Mopsik to execute a Power of Attorney which gave her complete authority over his financial affairs and which she used to pilfer his bank accounts of all funds available, make substantial credit purchases in his name for her benefit including the purchase of luxury automobiles and real property in her name and that of her husband, John Galjour;

- In November 2019, Mr. Mopsik first discovered that Ms. Galjour had misrepresented herself as an attorney and had used the trust placed in her by Mr. Mopsik because of her position with Mr. Kane to completely deplete Mr. Mopsik's estate leaving him basically broke and without the means to support himself; and

- In December 2019, Ms. Galjour was arrested by the authorities and charged with nearly 2000 counts of computer fraud and bank fraud, theft of over $250,000.00, exploitation of the infirm and practicing law without a license.

5

In June 2020, Defendants filed an unopposed motion to consolidate this case with Mr. Mopsik's earlier filed case against Ms. Galjour.[5] In the motion, Defendants tracked the language of La. C.C.P. art. 1561, stating that "common issues of law and fact predominate" and requested that the two pending cases be consolidated "for all purposes." The motion to consolidate was granted.

Also in June 2020, Defendants filed a peremptory exception based on the one-year peremptive period for legal malpractice claims set forth in La. R.S. 9:5605. Defendants contended that Mr. Kane put Mr. Mopsik on notice of his potential claims against them stemming from Ms. Galjour's misconduct in June 2018, but Mr. Mopsik failed to file suit until over one year later in January 2020.

Opposing the exception, Mr. Mopsik contended that despite Mr. Kane's June 2018 disclosures to him, he lacked sufficient notice for the one-year peremptive period to commence. According to Mr. Mopsik, Mr. Kane failed to provide additional facts about Ms. Galjour's wrongdoing, making La. R.S. 9:5605(E)'s fraud exception applicable. Meanwhile, Mr. Mopsik filed a motion for leave to file an amended petition to add a fraud count—COUNT FIVE—Fraud.

In June 2021, a hearing was held on both Defendants' peremptory exception and Mr. Mopsik's motion for leave to amend. Following the hearing, the trial court sustained the exception as to Mr. Mopsik's legal malpractice claims and denied Mr. Mopsik's motion for leave to amend. In its reasons for judgment, the trial court

_____

[5] In December 2019, Mr. Mopsik filed a Petition for Revocation of the Donation, Fraud, and Damages against Ms. Galjour, asserting she had committed several acts of fraud, which allowed her to deplete Mr. Mopsik's estate and financial accounts (the "Galjour Suit").

observed that Mr. Mopsik's legal malpractice claims were governed by La. R.S. 9:5605; that Mopsik had sufficient notice of his claims by June 2018, when Mr. Kane disclosed to Mr. Mopsik that he had potential claims against Defendants for Ms. Galjour's misconduct; and that Mr. Mopsik's legal malpractice claims were perempted pursuant to La. R.S. 9:5605's one-year peremptive period. The trial court further found there was no fraud here given the evidence established that Mr. Kane disclosed to Mr. Mopsik that he had potential malpractice claims against Defendants based on Ms. Galjour's misconduct. The trial court thus found R.S. 9:5605(E)'s fraud exception was inapplicable.

In September 2021, the trial court rendered a written judgment granting Defendants' peremptory exception of peremption, dismissing Mr. Mopsik's legal malpractice claims, and denying Mr. Mopsik's motion for leave to amend ("Judgment One"). Shortly thereafter, Mr. Mopsik took the position that because Judgment One dismissed only his legal malpractice claims, he had remaining tort claims that were not dismissed, including COUNT FOUR—Respondeat Superior.

In response, Defendants filed a second peremptory exception of peremption, an alternative peremptory exception of prescription, and a summary judgment motion (collectively the "Second Exception"). In the Second Exception, Defendants argued that all Mr. Mopsik's claims were dismissed in Judgment One; that if there were any remaining claims, those claims were legal malpractice claims governed by La. R.S. 9:5605 and thus perempted; and, in the alternative, that any remaining claims were prescribed pursuant to the one-year tort prescriptive period

7

set forth in former La. C.C. art. 3492. Defendants further argued that the remaining claims were time barred for the same notice reasons that the legal malpractice claims were dismissed—Mr. Kane's June 2018 disclosures to Mr. Mopsik.

In opposition to the Second Exception, Mr. Mopsik submitted his own affidavit. In his affidavit, Mr. Mopsik attested, among other things, that until November 2019, he was unaware of the following three facts: (i) that Ms. Galjour was no longer employed by Defendants at Legacy; (ii) that she misrepresented herself as an attorney; and (iii) that she was not a licensed, Louisiana attorney.

Following a hearing, the trial court, in December 2023, rendered the following judgment:

- The peremptory exception of peremption was overruled as to COUNTS ONE and FOUR;

- Because COUNTS TWO and THREE were previously dismissed on a peremptory exception of peremption by Judgment One, the peremptory exception of peremption was moot as to those counts;

- The alternative peremptory exception of prescription was maintained as to COUNTS ONE and FOUR, dismissing all Mr. Mopsik's remaining claims against Defendants with prejudice at Mr. Mopsik's cost; and

- The summary judgment motion was moot ("Judgment Two").

In its reasons for judgment, the trial court observed that the remaining claims—COUNTS ONE and FOUR—were delictual in nature and subject to a one-year prescriptive period under former La. C.C. art. 3492. It further observed that the one-year prescriptive period commenced at the same time as the one-year peremptive period governing the legal malpractice claims—COUNTS TWO and THREE—that previously were dismissed. Indeed, the trial court observed that

prescription began running in June 2018 for the same notice reasons that applied to the legal malpractice claims—Mr. Kane's June 2018 disclosures to Mr. Mopsik. In its reasons for judgment, the trial court observed:

> At the latest, [Mr. Mopsik] was informed , , , [about] the impropriety of Ms. Galjour's actions and the potential legal malpractice claim on June 15, 2018 [which was the date the Letter was sent]. The Court finds that [Mr. Mopsik] was sufficiently put on notice of damages from that day. [Mr. Mopsik] failed to file suit against [Defendants] until January of 2020, well after the one year deadline had expired.

This appeal followed.

## DISCUSSION

Mr. Mopsik's sole assigned error is that the trial court committed manifest error, abused its discretion, and committed legal error when it granted Defendants' exception of prescription as to the remaining claims—COUNTS ONE and FOUR.[6]

**Standard of Review and Prescription Principles**[7]

The applicable standard of review of a judgment on a peremptory exception of prescription turns on whether evidence was introduced on the exception; when, as here, evidence was introduced at the hearing on the exception, a manifest error standard of review applies. *Barkerding v. Whittaker*, 18-0415, p. 13 (La. App. 4

---

[6] Judgment Two, which dismissed as prescribed the remaining two counts—COUNT ONE—Negligent Hiring, Entrustment, and Retention—and COUNT FOUR—Respondeat Superior—is the only judgment before us on appeal. Judgment One, which dismissed the other two counts—COUNT TWO—Negligent Supervision—and COUNT THREE—Direct Negligence—was not appealed and is not before us. Although Mr. Mopsik filed a notice of intent to file a writ application to seek review of Judgment One, he failed to file one.

[7] The rules governing prescription and peremption are virtually the same; the only difference between these concepts lies in the fact that peremption cannot be renounced, interrupted, or suspended. *See Flowers, Inc. v. Rausch*, 364 So.2d 928, 931 (La. 1978) (observing that "peremption is but a form of prescription, a species thereof, but with the characteristic that it does not admit of interruption or suspension").

Cir. 12/28/18), 263 So.3d 1170, 1180.[8] An exception to this rule applies when the case involves no dispute regarding material facts, but only a determination of a legal issue. In that context, a *de novo* standard of review applies. *Felix v. Safeway Ins. Co.*, 15-0701, p. 6 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 631.

Ordinarily, the party filing the peremptory exception of prescription—generally the defendant—has the burden of proof. *See Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1361 (La. 1992). But, "if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed." *Jones v. State*, 04-0717, p. 3 (La. App. 4 Cir. 9/29/04), 891 So.2d 698, 701 (internal citation omitted). When the plaintiff's petition reveals on its face that prescription has run, "the plaintiff has the burden of showing the suspension, interruption or renunciation of prescription." *Jones*, *supra*.

In addressing a prescription exception, the initial issue that must be decided is the applicable prescriptive period. The starting point for making that determination, which generally is a legal one, is the allegations of the plaintiff's petition. *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, p. 10 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 801; *see also Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.*, 04-2482, p. 6 (La. 4/12/05), 898 So.2d 1260, 1265 (citing *Starns v. Emmons*, 538 So.2d 275, 277 (La. 1989)). The appropriate prescriptive period is not determined by the label of the cause of action but by "'the nature of the transaction and the underlying basis of the claim.'" *Copeland v.*

---

[8] At a hearing on a peremptory exception pleaded before trial, evidence may be introduced to support or controvert the exception. La. C.C.P. art. 931.

*Wasserstein, Perella & Co*., 278 F.3d 472, 479 (5th Cir. 2002) (quoting *Davis v. Parker*, 58 F.3d 183, 189 (5th Cir. 1995)).

"After the appropriate prescriptive period is determined, the dispute regarding timeliness hinges on when the prescriptive period began." *Holmes v. City of New* Orleans, 24-0047, p. 6 (La. App. 4 Cir. 7/16/24), ___ So.3d ___, ___, 2024 WL 3422500, *3. This is generally a factual issue. *See Oracle Oil, LLC v. EPI Consultants, Div. of Cudd Pressure Control, Inc*., 11-0151, p. 7 (La. App. 1 Cir. 9/14/11), 77 So. 3d 64, 70 (observing that "[t]he date on which prescription begins to run is a factual issue to be determined by the trier of fact").

An overarching principle is that "[s]tatutes regulating prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished." *Wells Fargo Fin. Louisiana*, 17-0413, p. 9, 231 So.3d at 801 (internal quotations and citations omitted). "[O]f two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." *Carter v. Haygood*, 04-0646, p. 10 (La. 1/19/05), 892 So.2d 1261, 1267 (citations omitted).

**Parties' Arguments**[9]

---

[9] Neither party addresses either the placement or the shifting of the burden of proof on the prescription exception. "Generally, in the judicial decisions . . . [in which] the burden of proof on an exception of prescription shifted to the plaintiff, the relevant dates were specifically alleged in the petition." *Barrack v. Pailet, Meunier & Leblanc, L.L.P*., No. CIV.A. 12-2716, 2014 WL 272124, at *7 (E.D. La. Jan. 23, 2014) (*unpub*.). Such is not the case here. The only relevant dates Mr. Mopsik specifically alleges in his petition are March 2017—when his attorney-client relationship with Defendants began— and November 2019—when he allegedly first discovered his claim against them. Mr. Mopsik fails to allege in his petition the date(s) on which the alleged tortious acts or omissions occurred.

Implicitly finding the burden was on Defendants, the trial court, in its reasons for judgment as to Judgment One, observed:

[W]hile [Mr. Mopsik] claimed in his petition that he had no knowledge of Ms. Galjour's misrepresentations until November 2019, [D]efendants have produced evidence in the form of Mr. Kane's affidavit and letters sent to [Mr. Mopsik] in

11

Mr. Mopsik's arguments on appeal focus on his alleged lack of sufficient notice to commence the applicable one-year period(s) until November 2019, less than one-year before he filed this suit. He also asserts four fraud-based contentions. One of those contentions is based on this Court's holding in *Ames v. Ohle*, 11-1540 (La. App. 4.Cir. 5/23/12), 97 So.3d 386. He cites *Ames* for the proposition that a bank-client's fraud claim against a bank regarding the bank's employee mishandling of a trust is a personal claim subject to a ten-year prescriptive period because it involves the intentional fraudulent conduct of a fiduciary.[10] Mr. Mopsik contends that the circumstances of this case are analogous to those in *Ames* and that he—like the bank-client in *Ames*—has a fraud claim governed by La. C.C. art. 3499's ten-year prescriptive period. Mr. Mopsik also contends that La. R.S. 9:5605(E)'s fraud exception applies.

Defendants counter that, contrary to the trial court's finding, all—and not just some—of Mr. Mopsik's claims are legal malpractice claims subject to La. R.S. 9:5605's one-year peremptive period. Alternatively, Defendants counter that regardless if the remaining claims are tort claims subject to a one-year prescriptive

---

June 2018, informing [Mr. Mopsik] of the impropriety of the donation of immovable property to Ms. Galjour and the potential legal malpractice claims. At that point, [Mr. Mopsik] was on notice of the act constituting malpractice and should have filed suit within one year from that date.

For these reasons, the trial court, in Judgment One, found Defendants satisfied their burden of proof as to COUNTS TWO and THREE of establishing Mr. Mopsik's claims were preempted under La. R.S. 9:5605. In Judgment Two, the trial court made the same findings as to the remaining claims in COUNTS ONE and FOUR, albeit under a different statute. Simply stated, the trial court found Defendants satisfied their burden of proof as to COUNTS ONE and FOUR by establishing Mr. Mopsik's claims were prescribed under former La. C.C. art. 3492.

[10] In *Ames*, this Court held that "[d]ue to the intentional fraudulent conduct of a fiduciary pled by [the bank-client,] . . . [the bank-client's] claim for fraud is personal and subject to the ten-year prescriptive period [set forth in La. C.C. art. 3499] as opposed to a negligence claim which is delictual and prescribes in one year [under former La. C.C. 3492]." 11-1540, p. 9, 97 So.3d at 392.

period (former La. C.C. art. 3492) or legal malpractice claims subject to a one-year peremptive period (La. R.S. 9:5605), the result is the same. In support, Defendants emphasize that the same notice principles—rules regarding when the applicable time period(s) commence to run—apply under both statutes. Defendants further counter that *Ames* is inapposite, that no fraud claim has been pleaded in this case, and that La. R.S. 9:5605(E)'s fraud exception is inapplicable.

In sum, the parties' arguments identify three possible statutory prescriptive periods:

(i)      La. R.S. 9:5605(A), which provides:

> No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.[11]

La. C.C. art. 3492 (former), which before July 1, 2024, provided: [12]

---

[11] This statutory provision is subject to a fraud exception codified in La. R.S. 9:5605(E), which provides that "[t]he peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953." Also, La. R.S. 9:5605(B) provides that "[t]he one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended."

[12] In Acts 2024, No. 423, § 2, effective July 1, 2024, the Legislature repealed former La. C.C. art. 3492 and replaced it with La. C.C. art. 3493.1, which provides that "[d]elictual actions are subject to a liberative prescription of two years. This prescription commences to run from the day that injury or damage is sustained." In so doing, the Legislature expressly provided that this Act "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act[, July 2, 2024]." Acts 2024, No. 423, § 3.

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. . . .

La. C.C. art. 3499, which provides:

> Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.

To provide a framework for addressing the parties' arguments, we divide our analysis into the following four parts: (i) characterization of remaining claims; (ii) sufficient notice to commence the period(s) running; (iii) fraud-based contentions; and (iv) other issues.

*Characterization of Remaining Claims*

Defendants contend that when, as here, a client's claims against his attorney arise out of an engagement to provide legal services, La. R.S. 9:5605 applies, regardless of the types of claims or theories of recovery that are advanced. Defendants emphasize that Mr. Mopsik's entire relationship with them was an attorney-client one. Defendants further emphasize that all of Mr. Mopsik's claims arise from their alleged failure to protect him from their non-lawyer staff member—Ms. Galjour.

Defendants cite Rule 5.3 of the Louisiana Rules of Professional Conduct ("Rule 5.3"), which provides that all lawyers have a professional duty to supervise their non-lawyer staff members.[13] Defendants contend that any alleged breach of

---

[13] La. St. Bar Art. 14 RPC, Rule 5.3 provides as follows:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:

> (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

Rule 5.3's professional duty that results in damages can only give rise to a legal malpractice claim that is subject to La. R.S. 9:5605. For all these reasons, Defendants contend that the trial court erred in failing to classify all of Mr. Mopsik's claims as legal malpractice claims governed by La. R.S. 9:5605.

The starting point to resolve the legal issue presented here is the language of the governing statute, La. R.S. 9:5605. The jurisprudence has construed the phrase "all actions" in La. R.S. 9:5605(A) as "refer[ring] to actions for legal malpractice whether they are tort based actions, contract based actions, or other-based actions." *Broussard v. F.A. Richard & Associates, Inc.*, 98-1167, p. 9 (La. App. 3 Cir. 3/17/99), 732 So.2d 578, 584. But, the statute does not apply to "all claims against attorneys in any capacity." *Davis*, 58 F.3d at 188. Rather, the statute "cover[s] all actions for damages predicated on traditional legal malpractice, but not more." *Id.*

Generally, traditional legal malpractice claims are "'those bases of liability that are unique to and arise out of the rendition of legal services [or] primarily concern the quality of legal services.'" *Id.* (quoting Ronald E. Mallen & Jeffery M. Smith, LEGAL MALPRACTICE § 1.1, at 3 (3d ed.1989)). "'The test to distinguish

---

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

malpractice from other wrongs is whether the claim primarily concerns the quality of legal services.'" *Id.*

In providing legal services, attorneys often employ non-legal staff. As Defendants point out, Rule 5.3 imposes a professional duty on attorneys to supervise their non-legal staff. Absent fraud, a client's claim arising out of an attorney's provision of legal services through non-legal staff does not fall outside the scope of a legal malpractice claim governed by La. R.S. 9:5605. *See* La. R.S. 9:5605(E) (providing an exception for fraud claims).

Although La. R.S. 9:5605 does not apply to every claim by a client against his attorney in every capacity, nothing in Mr. Mopsik's petition takes his claims out of the realm of legal malpractice claims governed by this statute. Indeed, Mr. Mopsik avers in his petition that his claims against Defendants arise out of his engagement of Defendants to provide estate-planning services—a form of legal services. Insofar as Mr. Mopsik's claims are linked to Defendants' non-legal staff member's (Ms. Galjour's) misdeeds committed during the course and scope of her employment with Defendants, those misdeeds arise out of Defendants' engagement to provide legal services to Mr. Mopsik. For these reasons, we conclude that the trial court erred in failing to characterize Mr. Mopsik's remaining claims as legal malpractice claims.

*Sufficient Notice to Commence the Period(s) Running*

Regardless of the classification of Mr. Mopsik's remaining claims as tort versus legal malpractice claims, the notice rules for determining when the appropriate limitation period commences are the same. Under both former La. C.C. art. 3492 (the tort provision) and La. R.S. 9:5605 (the legal malpractice provision), the limitation period commences to run when a plaintiff has sufficient information

to put him on guard. *See Ames*, 11-1540, p. 13, 97 So.3d at 394 (observing that "[c]onstructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry"). The narrow issue is whether the trial court erred in making the factual determination that Mr. Mopsik had sufficient notice to put him on guard more than one year before he filed suit.

Here, Mr. Mopsik contends that Defendants, in the Second Exception, erroneously relied upon the Letter as establishing notice sufficient to commence the one-year period. Mr. Mopsik contends that the flaw in Defendants' reliance on the Letter is that Mr. Kane merely advised him, in the Letter, that the Property Donation to Ms. Galjour was improper and that he might have potential legal malpractice claims against Defendants. According to Mr. Mopsik, the Letter was deficient because of what it failed to do, which included:

- Address his claims for Ms. Galjour's fraud and depletion of his bank accounts;

- Inform him that Ms. Galjour was in fact not an attorney, although Mr. Kane had allowed her to represent that she was; and

- Mention that Disciplinary Counsel had advised Mr. Kane on June 12, 2018 that Ms. Galjour had never attended law school and that several of Mr. Kane's clients had complained that Ms. Galjour had been holding herself out to be an attorney, when in fact she was not an attorney.

Defendants counter that Mr. Mopsik's contention that he had insufficient notice in June 2018, when the Letter was sent, about Mr. Kane's alleged wrongdoing and the resultant damages for the one-year period(s) to commence to run is erroneous, legally and factually. Legally, Defendants cite the jurisprudence holding that a client has sufficient notice to commence the one-year limitation periods so long as the client has enough information to put him on guard—even if he has little-to-no information about the lawyer's negligent actions or inactions,

17

resultant harm, and the link between the two. *See Miralda v. Gonzalez*, 14-0888, p. 21 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1011 (internal quotations and citation omitted) (observing that limitation period commences when "a client knows or should have known that a lawyer's actions or inactions may cause the client to incur damages, thereby creating a legal cause of action"). Defendants emphasize that "[t]he law does not require that a plaintiff be informed of possible malpractice by an attorney . . . before prescription begins to run." *Miralda*, 14-0888, p. 25, 160 So.3d at 1014. Factually, Defendants contend that Mr. Mopsik had more than enough knowledge in June 2018, when the Letter was sent, to commence the one-year limitation period.

Given the Letter's significance in resolving the issues presented, we find it instructive to set forth the Letter's contents, which are as follows:

> I write to follow up on our in-person meeting at your home on June 13, 2018. More specifically, I write to provide you with more detailed information and options regarding your immovable property donation to my former paralegal, Kristina Galjour.

> In performing an audit this week of property transfers involving Ms. Galjour, I discovered an act of donation dated September 17, 2017, from you to Ms. Galjour relating to immovable property located at 3801 Nashville St., New Orleans. Louisiana 70125. I have attached a copy of this donation for your review. The donation caught me by surprise; I was shocked to learn that Ms. Galjour was involved in a gratuitous transaction with one of my firm's clients. My surprise quickly turned to serious concern. A donation from you, my client, to Ms. Galjour, my former employee, raises real issues about the validity and legality of such a transaction. It also may be the basis for a legal malpractice claim against me and my firm.

> In visiting with you at your home on June 13, 2018, you told me that it was your intent to donate the property to Ms. Galjour and that you felt no pressure from Ms. Galjour to donate the property to her. When questioned, you stated to me, "I wanted to do it. She has always been nice to me, and I wanted to do something nice for her". While I understand your kind intentions, I must point out that Ms. Galjour's acceptance of this gift from you was highly irregular and, in my view, simply wrong.

I want you to be treated with utmost fairness and want to assure that your legal rights are protected. For that reason, I advise you to retain independent legal counsel to review your donation and to advise you as to any claims that you may have to nullity the transaction or to seek damages from me, my firm, or Ms. Galjour. If you wish, I would be happy to pay any costs associated with retaining independent legal counsel. Even if you decide to assert no claims as a result of this donation, you nonetheless should retain independent legal counsel to,. if you wish, ratify the transaction to assure its legality. I look forward to assisting you in any way possible moving forward.

Contrary to Mr. Mopsik's contention, we conclude, as did the trial court, that he had sufficient notice to commence the one-year period more than one year before he filed this suit. This conclusion is supported by not only the Letter's content, but also the following other enumerated events, which Defendants cite in their appellee brief, that took place more than one-year before Mr. Mopsik filed suit:

- Mr. Mopsik terminated his attorney-client relationship with Mr. Kane permanently following Mr. Kane's . . . disclosures [in the Letter];

- Mr. Mopsik demanded a return of his $3,750 [attorney's] fee for the creation of his trust following Mr. Kane's . . . disclosures [in the Letter];

- Mr. Mopsik provided Mr. Kane with a list of grievances about Mr. Kane and his firm's alleged shortcomings as Mr. Mopsik's lawyer following Mr. Kane's disclosures [in the Letter] and asserted that Mr. Kane had treated him unfairly;

- Mr. Mopsik consulted with separate counsel regarding how to deal with Mr. Kane following the . . . disclosures [in the Letter];

- Mr. Mopsik asked that Mr. Kane make no further contact with him following Mr. Kane's disclosures [in the Letter] and the return of Mr. Mopsik's prepaid $3,750 attorney's fee; and

- Mr. Kane refunded Mr. Mopsik's prepaid $3,750 attorney's fee.

Moreover, as Defendants point out, Mr. Mopsik's statement in his affidavit that he lacked knowledge of Defendants' termination of Ms. Galjour's employment until November 2019 is belied by the record. In his own handwritten

correspondence to Mr. Kane, dated June 2018, Mr. Mopsik referenced his knowledge that Ms. Galjour had been terminated; he referenced Ms. Galjour losing her job. Likewise, Mr. Kane, in the Letter, also dated June 2018, informed Mr. Mopsik that Ms. Galjour was no longer his employee (paralegal).

In sum, the Letter's contents coupled with the other enumerated events that occurred more than one year before Mr. Mopsik filed suit support the trial court's factual finding that the one-year period commenced more than one year before this suit was filed. Accordingly, the trial court's factual finding was not manifestly erroneous.

*Fraud-Based Contentions*

We next address Mr. Mopsik's four fraud-based contentions. First, Mr. Mopsik contends that because the two lawsuits that he has filed—this one and the Galjour Suit in which he asserted fraud against Ms. Galjour—were consolidated "for all purposes," he has particularly alleged fraud in this case. This contention lacks merit. Consolidation of suits, even for all purposes, does not merge the allegations of the separate suits. The general purpose of consolidation is procedural convenience; each consolidated suit retains its independence. *See In re Succession of Cannata*, 14-1546-48, p. 9 (La. App. 1 Cir. 7/10/15), 180 So.3d 355, 364 (observing that "[t]he consolidation of cases is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity"). There has never been a fraud claim plead in this case.

Second, Mr. Mopsik cites his attempts to amend his petition to add a fraud claim—COUNT FIVE—as supporting the existence of a fraud claim in this case. This contention is not supported by the record. The trial court denied Mr. Mopsik's

20

motion for leave to amend to assert a fraud claim in Judgment One. In so doing, the trial court observed that "in light of the court's ruling on [Defendants'] exception of peremption, [Mr. Mopsik's] motion for leave to file amended petition is denied, as any amendment to add more claims of malpractice is preempted and futile." At the hearing on the Second Exception, the trial court reiterated its denial of Mr. Mopsik's motion for leave to amend. Again, no fraud claim has ever been plead in this case.

Third, Mr. Mopsik contends that this Court's holding in *Ames* applies here and supports applying a ten-year prescriptive period under La. C.C. art. 3499. As noted elsewhere in this opinion, Mr. Mopsik contends that this case presents the exact same factual situation as that presented in *Ames*; he contends that he is in the same position as the plaintiff—the bank-client—in *Ames.* He contends that Ms. Galjour's status as a fiduciary, which Defendants facilitated, resulted in her ability to defraud him. Contrary to Mr. Mopsik's contention, *Ames* is factually distinguishable. As Defendants point out, unlike *Ames*, this is not a client's case against a bank. This is a client's case against his former attorney.[14] Mr. Mopsik's contention, based on *Ames*, that a ten-year prescriptive period applies here is unpersuasive.

Fourth, Mr. Mopsik contends that La. R.S. 9:5605(E)'s fraud exception applies here. Again, given Mr. Mopsik has not plead a fraud claim in this case, this argument is unpersuasive.

---

[14] According to the jurisprudence, a client's fraud claim against an attorney is governed by either the one-year peremptive period set forth in La. R.S. 9:5605 or the one-year (not ten-year) prescriptive period for tort claims in former La. C.C. art. 3492 when the peremptive periods set forth in La. R.S. 9:5605 do not apply.

Our rejection of Mr. Mopsik's four fraud-based contentions is buttressed by the trial court's findings, rejecting virtually the same fraud-based contentions. The trial court, in its reasons for judgment in connection with Judgment Two, observed:

> First, after reviewing all of the petitions that have been filed, the Court notes that [Mr. Mopsik] has not plead [a] fraud claim against [Defendants]. The only Petition that makes allegations as to [Defendants] is the January 28, 2020 Petition, and it specifically pleads claims of negligent hiring, entrustment, retention, negligent supervision, direct negligence, and respond[eat] superior. [Mr. Mopsik] does not allege fraud as to [Defendants] anywhere in the petition.
>
> Second, even if fraud had been plead those allegations would fall under the one year [peremptive] period established by Louisiana R.S. 9:5605. At the June 25, 2021 hearing, this Court rejected [Mr. Mopsik's] same argument that subsection E of Revised Statute 9:5605 applied on the grounds that the fraud exception applies to the three year [peremptive] period, not the one year period. [Mr. Mopsik] cannot reply upon the general prescriptive period for personal actions established by the [La. C.C.] 3499 where there is a more specific statute that creates a [peremptive] period for Cause of Action.

Moreover, the trial court found that there was no fraud here. In so doing, the trial court observed that Mr. Kane notified Mr. Mopsik that Ms. Galjour had engaged in wrongdoing as soon as Mr. Kane discovered that Ms. Galjour had wrongfully taken something from Mr. Mopsik. Accordingly, none of Mr. Mopsik's fraud-based contentions has merit.

*Other Issues*

At the end of his appellant brief, Mr. Mopsik lists a trio of other issues that he raises for the first time on appeal—(i) negligent misrepresentation; (ii) *contra non valentem*; and (iii) exceptional circumstances.[15] Defendants counter that

---

[15] As to the first issue, Mr. Mopsik contends that Mr. Kane is guilty of negligent misrepresentation; that Ms. Galjour's misconduct continued until November 2019; and that claim is thus not time barred. As to the second issue, Mr. Mopsik contends that prescription should be suspended based on the *contra non valentem* doctrine because he was prevented from acting as a result of Mr. Kane's misrepresentations and Mr. Mopsik's continued relationship of trust with Ms. Galjour. As to the third issue, Mr. Mopsik cites the principle that under exceptional

because Mr. Mopsik is raising the other issues for the first time on appeal, this Court should not consider those issues.

The general rule is that issues raised for the first time on appeal are not properly before an appellate court. *See WBL SPE I, LLC v. Stevenson*, 20-0042, p. 8, n.15 (La. App. 4 Cir. 2/24/21), 313 So.3d 1263, 1267 (quoting *Billieson v. City of New Orleans*, 09-0410, p. 8 (La. App. 4 Cir. 11/12/09), 26 So.3d 796, 802) (observing that "'[i]t is well established that as a general matter, appellate courts will not consider issues raised for the first time, which were not pleaded in the trial court below and which the trial court has not addressed'"); *see also Quinn v. Palmer*, 23-0181, 23-0254, p. 16 (La. App. 4 Cir. 2/5/24), 385 So.3d 249, 260 (citing *Hardy v. Juvenile Justice Intervention Ctr.*, 21-0715, p. 5 (La. App. 4 Cir. 6/15/22), 342 So.3d 1076, 1080). Here, we find no reason to depart from this general rule. Accordingly, we decline to address the other issues.

## **DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**

---

circumstances, courts can dispense with prescription in the interests of justice; he contends that this is such an exceptional circumstance.